IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

**LISA D. COOK, in her official capacity as a member of the Board of Governors of the Federal Reserve System and her personal capacity,** *Plaintiff-Appellee,*

v.

**DONALD J. TRUMP, in his official capacity as President of the United States; BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM, both collectively and in their individual official capacities; JEROME H. POWELL, in his official capacity as Chair of the Board of Governors of the Federal Reserve System,** *Defendants-Appellants.*

On Appeal from the United States District Court
for the District of Columbia

**BRIEF FOR *AMICUS CURIAE* SEPARATION OF POWERS CLINIC IN SUPPORT OF DEFENDANTS-APPELLANTS' EMERGENCY MOTION FOR A STAY PENDING APPEAL**

R. Trent McCotter
  *Counsel of Record*
Boyden Gray PLLC
800 Connecticut Ave. NW
Suite 900
Washington, DC 20006
(202) 706-5488
tmccotter@boydengray.com
*Counsel for Amicus Curiae*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 29, *Amicus* hereby submits this certificate.

**A. Parties and Amici**

The parties and amici who have appeared before the Court are listed in Defendants-Appellants' D.C. Circuit Rule 28(a)(1) certificate.

**B. Rulings Under Review**

The ruling under review is an opinion (Dkt. 27) and order (Dkt. 28) granting a temporary restraining order, which the district court issued on September 9, 2025. The opinion and order are attached to Defendants-Appellants' motion.

**C. Related Cases**

The related cases are listed in Defendants-Appellants' D.C. Circuit Rule 28(a)(1) certificate.

# DISCLOSURE STATEMENT

Per Federal Rules of Appellate Procedure 26.1 and 29(a), and D.C. Circuit Rule 26.1, *Amicus* states that it is not a corporation or similar entity, and no further Rule 26.1 disclosure statement is required.

# TABLE OF CONTENTS

DISCLOSURE STATEMENT ................................................................. iii

TABLE OF AUTHORITIES .................................................................... v

IDENTITY AND INTEREST OF *AMICUS CURIAE* ............................ 1

SUMMARY OF ARGUMENT ................................................................. 2

ARGUMENT ............................................................................................ 3

   I.   The District Court's Limitation of "Cause" in Section 242 to Actions While in Office Is Textually Unsupported and Risks Needless Escalation ........................................................................ 3

   II.  "Cause" Can Include Policy Disagreements .................................. 5

   III. Any Required Process Is Not "Onerous" ........................................ 7

CONCLUSION ......................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CFPB v. All Am. Check Cashing, Inc.*,
   952 F.3d 591 (5th Cir. 2020) ................................................................ 7

*Collins v. Yellen*,
   594 U.S. 220 (2021) .............................................................................. 3

*PHH Corp. v. CFPB*,
   881 F.3d 75 (D.C. Cir. 2018) ..................................................... 2, 6, 7, 8

**Statutes**

12 U.S.C. § 242 .......................................................................... 2, 3, 4, 5, 6, 7

12 U.S.C. § 5491 ............................................................................................. 3

# IDENTITY AND INTEREST OF *AMICUS CURIAE*[1]

*Amicus curiae* the Separation of Powers Clinic at The Catholic University of America's Columbus School of Law (previously at the Antonin Scalia Law School at George Mason University) provides students an opportunity to discuss, research, and write about separation of powers issues in ongoing litigation. The Clinic has submitted over fifty briefs in federal cases implicating separation of powers, including the contours of removal protections for federal officials.

---

[1] No person other than *amicus curiae* and its counsel assisted with or made a monetary contribution for preparing or submitting this brief. *Amicus* has sought leave to file this brief.

## SUMMARY OF ARGUMENT

In its decision granting preliminary relief, the district court made several discrete errors. *First*, it concluded that "cause" in 12 U.S.C. § 242 means only "in-office conduct." Slip Op. 16. That is wrong as a matter of textual interpretation and also risks unnecessarily escalating personnel disputes into criminal matters, given the district court's suggestion that the way around this "in-office" rule is to imprison an official for pre-office conduct and *then* remove her from office. *See* Part I, *infra*.

Further, the district court concluded that "cause" cannot include policy disagreements. That is also wrong. Even assuming § 242 incorporated some form of so-called "INM" restrictions (inefficiency, neglect of duty, or malfeasance), an official's refusal to comply with the President's policy is itself a form of inefficiency, as Judge Griffith explained in his concurrence in *PHH Corp. v. CFPB*. *See* Part II, *infra*.

Finally, the district court envisioned a full-blown evidentiary hearing before Ms. Cook could be terminated. But that likewise would only risk needless escalation, as Ms. Cook would presumably be put under oath and asked about potentially criminal conduct, raising the specter of self-incrimination. *See* Part III, *infra*. She had public notice of

the allegations here nearly a week before she was terminated; she therefore had an opportunity to respond. That is sufficient, assuming any process was required in the first place.

Defendants-Appellants have a strong likelihood of success on the merits. The Court should grant their emergency stay motion.

## ARGUMENT

### I. The District Court's Limitation of "Cause" in Section 242 to Actions While in Office Is Textually Unsupported and Risks Needless Escalation.

The district court concluded that "cause" in 12 U.S.C. § 242 means only "in-office conduct that demonstrates ineffective or unfaithful execution of statutory duties." Slip Op. 16. That is wrong textually and also encourages turning personnel disputes into criminal proceedings.

*First*, unlike other statutory for-cause provisions, § 242 does not limit "cause" to actions or consequences while "in office." *E.g.*, 12 U.S.C. § 5491(c)(3). Section 242 in no other way refers to actions while in office, either. The text thus strongly indicates that cause is not limited to "in-office conduct." Slip Op. 16. Combine that with § 242's omission of so-called "INM" factors (inefficiency, neglect of duty, or malfeasance), and there is only one conclusion: the for-cause provision in § 242 is as broad as could be imagined. *See Collins v. Yellen*, 594 U.S. 220, 255–56 (2021)

3

(contrasting the two types of clauses). That alone should have led the district court to conclude that "cause" in § 242 is not limited to in-office conduct.

*Second*, it makes little sense to limit § 242 to actions while in office. Imagine Ms. Cook were alleged to have bribed her way to Senate confirmation. That would be action before she took office and thus, under the district court's view, could not be a basis for dismissal. It is unbelievable that this would not qualify as "cause" for removing her from that same position.

The district court's response was that such an official should be indicted and convicted for that pre-office conduct, at which point there would be in-office action (a conviction) that reduces her efficiency (because she's in prison). Slip Op. 21–22. That is an unnecessary and extreme escalation just to remove an official from office—a power that is otherwise the strong default for executive officials under Article II. A President should not have to literally imprison a federal official just to remove her from office. Frankly, the suggestion is sufficiently jarring that it should have given the district court pause.

Even setting that aside, what if the prior crime were beyond the statute of limitations or could not be proven beyond a reasonable doubt? There is no indication of such requirements in the otherwise broad term "for cause." The district court erred by introducing them.

Further, even if only in-office conduct could satisfy "cause," it is unclear why Ms. Cook's in-office refusal to respond substantively to the allegations against her would not qualify. The district court acknowledged that an in-office conviction for pre-office conduct would qualify as cause. Under the same logic, an in-office refusal to rebut the charge against her should qualify just the same. In any event, surely that construction is at least preferable to one that encourages Ms. Cook to be arrested and imprisoned.

## II. "Cause" Can Include Policy Disagreements.

The district court also concluded that "cause" in § 242 cannot include "policy disagreement[s]." Slip Op. 12. The court cited *Humphrey's Executor* as allegedly supporting that conclusion. *Id.* That view is also incorrect for several reasons.

*First*, as noted above, § 242 does not include INM language, unlike the clause in *Humphrey's Executor*. So even if *Humphrey's Executor* did

5

hold that policy disagreements cannot amount to INM, that says nothing about whether such disagreements would amount to "cause" under § 242.

*Second*, as Judge Griffith explained in *PHH Corp. v. CFPB*, 881 F.3d 75 (D.C. Cir. 2018), *Humphrey's Executor* did *not* hold that policy disagreements cannot amount to INM. *Humphrey's Executor* "nowhere addressed the extent to which the INM standard insulated Humphrey. When the Court determined that President Roosevelt failed to comply with the INM standard, it was not because he removed Humphrey for any specific policy the Commissioner had pursued. Instead, the President failed to comply with the INM standard because he expressly chose to remove Humphrey *for no cause at all*." *Id.* at 128 (Griffith, J., concurring in the judgment) (emphasis in original).

Rather, as Judge Griffith explained, policy disagreements assuredly can amount to "inefficiency," which "is the broadest of the three INM removal grounds." *Id.* at 131–32. Dictionary definitions, historical evidence, and contemporary usage all demonstrated that "an officer is 'inefficient' when he fails to produce or accomplish some end." *Id.* at 134. For example, in the context of the Comptroller, "the breadth of the

'inefficiency' ground permitted Congress to remove him for failing to perform his duties in the manner Congress wanted." *Id.* at 133.

Surveying this extensive record, Judge Griffith concluded that "an officer is inefficient when he fails to produce or accomplish the agency's ends, as understood or dictated by the President operating within the parameters set by Congress." *Id.* at 134. Other judges across the ideological spectrum have agreed that this is a reasonable interpretation of "inefficiency" and that it also comports with "avoidance" principles. *CFPB v. All Am. Check Cashing, Inc.*, 952 F.3d 591, 602 (5th Cir. 2020) (Higginbotham & Higginson, JJ., concurring).

Thus, even if § 242 adopted some variation of INM (it doesn't), the President is still authorized to terminate Ms. Cook for policy disagreements.

## III. Any Required Process Is Not "Onerous."

The district court also concluded that Ms. Cook was deprived of her office without due process. Again, that is incorrect. Even assuming that some sort of process is required, it is not burdensome. As Judge Griffith explained, "there is little reason to think it would impose an onerous

burden on the President." *PHH Corp.*, 881 F.3d at 135 (Griffith, J., concurring in the judgment).

Here, Ms. Cook was undoubtedly on notice of the proposed basis for her removal. Notice was publicly given, and she had an opportunity to respond. But the district court demanded more, suggesting that Ms. Cook be given a "formal evidentiary hearing." Slip Op. 38. Again, this forces needless escalation. Should Ms. Cook be put under oath and asked questions about her potential commission of a crime? What if she equivocates or invokes the Fifth Amendment? Could the President still fire her then? The district court has no answers. And from Ms. Cook's perspective, it would presumably be desirable to answer such charges without the potential self-incrimination and perjury overtones from such a hearing.

Again, it seems the district court's preferred path was to force escalation by converting personnel decisions into criminal inquisitions. It should not have to come to that. Even Ms. Cook should agree.

# CONCLUSION

The Court should grant Defendants-Appellants' emergency motion.

September 11, 2025

Respectfully submitted,

/s/ R. Trent McCotter
R. TRENT MCCOTTER
  *Counsel of Record*
BOYDEN GRAY PLLC
800 Connecticut Ave. NW
Suite 900
Washington, DC 20006
(202) 706-5488
tmccotter@boydengray.com

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface and type style requirements of Federal Rules of Appellate Procedure 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook and 14- point font. There is no word limitation that specifically applies to an amicus brief at the emergency-motion stage. This brief contains 1437 words, excluding the exempt portions. Leave of Court has been sought to file this brief.

*/s/ R. Trent McCotter*
R. Trent McCotter

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of this Court by using the CM/ECF system, which will serve all parties automatically.

*/s/ R. Trent McCotter*
R. Trent McCotter
