F[NOT YET SCHEDULED FOR ORAL ARGUMENT]

**No. 25-5326**

# United States Court of Appeals
## for the
## District of Columbia Circuit

---

LISA D. COOK,

in her official capacity as a member of the Board of Governors of the Federal
Reserve System and her personal capacity,

*Plaintiff-Appellee*,

v.

DONALD J. TRUMP, in his official capacity
as President of the United States, *et al.*,

*Defendants-Appellants*.

---

On Appeal from the United States District Court for
the District of Columbia (Case No. 1:25-cv-02903-JMC)

---

**PLAINTIFF-APPELLEE'S OPPOSITION TO THE
MOTION FOR A STAY PENDING APPEAL**

---

Norman L. Eisen
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue, S.E.
SE #15180
Washington, DC 20003
T: (202) 601-8678
norman@democracydefenders.org

Abbe David Lowell
LOWELL & ASSOCIATES, PLLC
1250 H Street, N.W., Suite 250
Washington, DC 20005
T: (202) 964-6110
F: (202) 964-6116
ALowellPublicOutreach@
lowellandassociates.com

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28, Plaintiff-Appellee Lisa D. Cook hereby submits her Certificate as to Parties, Rulings and Related Cases:

### A.        Parties and Amici

All parties, intervenors, and *amici* appearing before the District Court and in this Court are listed in the government's Motion for a Stay Pending Appeal (Doc #2134492).

### B.        Rulings Under Review

Reference to the District Court's September 9, 2025 ruling at issue appears in the government's Motion for a Stay Pending Appeal, and is attached thereto.

### C.        Related Cases

This case was before the District Court as case no. 1:25-cv-02903-JMC.  The government has appealed the District Court's order granting a preliminary injunction (ECF 28) and opinion (ECF 27), and that appeal is pending before this Court as No. 25-5326.

*/s/ Abbe David Lowell*
Abbe David Lowell
LOWELL & ASSOCIATES, PLLC
1250 H Street, N.W., Suite 250
Washington, DC 20005
T: (202) 964-6110
F: (202) 964-6116
ALowellpublicoutreach@lowellandassociates.com

## TABLE OF CONTENTS

INTRODUCTION ................................................................................1

STATEMENT OF THE CASE.............................................................3

STANDARD OF REVIEW ..................................................................5

    I.    The President's "Cause" Determination is Subject to Judicial Review. ...................................................................................................5

    II.    The is Government is Not Likely to Succeed on the Merits.................8

        A.    "For Cause" Does Not Mean "At Will."...........................................8

        B.    The President's Attempt to Remove Governor Cook was Without "Cause"...............................................................................................8

            1.    The District Court Correctly Concluded that Pre-Office Conduct Does Not Constitute Cause. .........................................8

        C.    Governor Cook Was Deprived of Her Statutory and Constitutional Rights to Notice and an Opportunity to Be Heard.........................11

    III.    The Remaining Factors Favor Governor Cook.................................15

CONCLUSION ..................................................................................21

## INTRODUCTION

For more than a century, Congress safeguarded the independence of the Federal Reserve through statutory protection against the at-will removal of its members.  A few months ago, the Supreme Court reaffirmed the importance of that statutory protection, emphasizing its long and distinct historical pedigree.  The Fed, the Court explained, is "a uniquely structured, quasi-private entity that follows in the distinct historical tradition of the First and Second Banks of the United States." *Trump v. Wilcox*, 145 S. Ct. 1415 (2025).  President Trump's attempted removal of Governor Lisa Cook, if allowed, would mark an immediate end to that history.  And it would send a destabilizing signal to the financial markets that could not be easily undone.

The government does not challenge the constitutionality of the statutory removal protection guaranteeing the Board's independence. Yet it nevertheless asks this Court, on an emergency basis, to render that protection meaningless by reducing for-cause removal to a "matter of discretion" that is "not reviewable" by any court. Mot. at 1 (quoting *Reagan v. United States*, 182 U.S. 419, 425 (1901)).  And, worse still, the government asks the Court to abdicate its role in a case in which the attempted removal was announced without affording any notice or opportunity to be heard—contrary to both the statute and constitutional due process.  That would transform the Federal Reserve from a historically independent institution into an at-

1

will body, leaving the nation's central bank (and its monetary policy) at the mercy of the White House and its political whims.

That is the opposite of what Congress intended. And it is therefore the opposite of what the law requires. "For cause," as a matter of black-letter law and common sense, "does not mean the same thing as 'at will.'" *Collins v. Yellen*, 594 U.S. 220, 256 (2021) (alteration adopted).

This Court can leave for another day any hard questions about the precise scope of a President's for-cause-removal authority.   Under any plausible formulation, this removal is not for cause. *First*, the accusations against Governor Cook concern private, out-of-office conduct that was either known or knowable by the Executive and   Legislative   branches   in   considering   Governor   Cook's nomination  and confirmation. *Second*, Governor Cook has never been found guilty of—or even been formally charged with—any wrongdoing. *Third*, even the unsubstantiated accusations against Governor Cook are vague and incomplete— indeed, the government concedes (Mot. 1) that it does not know Governor Cook's "mens  rea  when  making  the  representations"  at issue.   *Fourth*, the President purported to terminate Governor Cook only after expressing disagreement with her policy views.

Even setting aside the weakness of its position on the merits, the government cannot meet its burden, as a proponent of a stay, to show that the traditional equitable

stay factors favor its requested relief. Unlike the plaintiffs in other recent removal cases before this Court, Governor Cook has continued to serve in her position while her lawsuit is pending.

A stay by this Court would therefore be the first signal from the courts that our system of government is no longer able to guarantee the independence of the Federal Reserve. Nothing would then stop the President from firing other members of the Board on similarly flimsy pretexts. The era of Fed independence would be over.

The risks to the nation's economy could be dire.  Central banks like the Federal Reserve are independent for a reason: Even the perception of political influence can destroy the investor confidence that is essential for economic growth and stability.  And that bell cannot be unrung.  Once confidence in the bank's independence is lost, it cannot easily be regained.  The result, as the experience of other countries has shown, is spiraling interest rates and economic disaster.  The government presents no interest sufficient to justify imposing potentially dire consequences on the national economy by rushing to grant relief that cannot be undone.  This Court should affirm the decision of the district court and consider this case on the merits in an orderly manner that fully preserves the status quo.

## STATEMENT OF THE CASE

In 1913, Congress passed the Federal Reserve Act, 12 U.S.C. § 242. As

3

originally enacted, the FRA provided that Federal Reserve Board members could be removed by the President only "for cause." *Id*. That for-cause removal provision was briefly rescinded after the Supreme Court's decision in *Myers v. United States*, 272 U.S. 52 (1926), then reinstated less than a decade later.

Governor Cook is serving a 14-year term set to expire in 2038. On August 20, 2025, Federal Housing Finance Agency ("FHFA") Director Pulte posted on *X* a screenshot of a referral letter to the Department of Justice alleging that Governor Cook "appears" to have claimed two different homes as her main residence in 2021 to "potentially" get lower interest rates and better loan terms. Though the referral letter was dated five days earlier, neither the FHFA nor the DOJ had given Governor Cook notice of the allegation prior to Director Pulte's social media post. Just thirty minutes after Director Pulte posted on *X*, President Trump posted on *Truth Social*: "Governor Cook must resign, now!!!"

Five days later, President Trump posted a two-page letter on *Truth Social* purporting to fire Governor Cook from the Board of Governors of the Federal Reserve, "effective immediately," relying on the unsubstantiated allegation in Director Pulte's letter. Governor Cook was not provided any opportunity to address or correct the unsubstantiated claims leveled against her by Director Pulte and President Trump.[1]

---

[1] The government's motion repeatedly mischaracterizes the President's stated basis

## STANDARD OF REVIEW

A stay pending appeal is an "extraordinary" remedy. *Citizens for Resp. & Ethics in Washington v. FEC*, 904 F.3d 1014, 1017 (D.C. Cir. 2018) (per curiam). As the movant, the government must show (1) "strong" likelihood of success, (2) irreparable injury, (3) that a stay will not "substantially injure the other parties," and (4) that a stay favors the public interest. *See Nken v. Holder*, 556 U.S. 418, 426 (2009).

## I.    The President's "Cause" Determination is Subject to Judicial Review.

The government's motion begins (at 9) with a sweeping argument: that *no court* may review the President's "for cause" determination here.  But in *Wiener v. United States*, 357 U.S. 349 (1958), the Supreme Court had no difficulty recognizing the availability of judicial review for *implied* for-cause removals.  *Id.* at 356 (rejecting the claim that for-cause removal permits a President to remove an officer "merely because he wanted his own appointees").  If that is true, it must undoubtedly be true for *express* for-cause removals as well.  *See* Op. at 12 (explaining that

---

for attempting to remove Governor Cook.  What began as purported termination for what "appears" as "gross negligence" and lack of "competence and trustworthiness" (Compl. Ex. C) has turned into "evidence of apparent mortgage fraud" (Mot. 5), "financial misconduct" (*id.* 11), and "financial fraud" (*id.* 13, drawing analogies to Bernie Madoff, Charles Ponzi). The bases that the government offers for her removal now are not what the President claimed in the record.  And civil papers seeking emergency relief to preserve her job status are not the proper place to rebut the underlying and inaccurate accusations leveled against Governor Cook.

"whether the President has even provided a legally permissible cause . . . is clearly reviewable").[2]

Even so, the government insists that *Reagan v. United States*, 182 U.S. 419 (1901) cuts against that view. According to the government, when a statute permits "removal for cause," that "'is a matter of discretion and not reviewable,' at least if the 'causes are not defined' by the statute." ECF 13 at 7 (quoting *Reagan*, 182 U.S. at 425). That is wrong.

In *Reagan*, the Supreme Court considered whether judicial review was available for certain judicially appointed commissioners *without* fixed tenure who were, under their authorizing statute, removable "for causes prescribed by law." *Id.* at 424. It held that such commissioners were not entitled to judicial review. *Id.* at 425. But in the course of deciding that question, the Court explicitly recognized that judicial review *is available* for those officers (like Federal Reserve Board Governors) serving fixed terms. *Id.* at 425. The Court specified that judicial review was available where "causes of removal are specified by Constitution or statute, as also where the term of office is for a fixed period." *Id.* *Reagan* explained that, for

---

[2] Although the district court found it declined to inquire into the sufficiency of the evidence presented by the President because his "stated cause falls outside the causes permissible under the statute," Op. at 12 n.9, the sufficiency of evidence is subject to judicial review. If it were not, the President could remove members of the Board by baselessly accusing them of whatever crimes he invented, so long as those crimes related to in-office conduct.

officers serving under a "fixed period" term of office, "notice and hearing are essential. If there were not, the appointing power could remove at pleasure or for such cause as it deemed sufficient." *Id. Reagan* thus forecloses the government's contention that under the FRA, a "cause" determination must be left to the President and President alone.

That understanding dates back centuries. Lev Menand & Jane Manners, *The Three Permissions: Presidential Removal and the Statutory Limits of Agency Independence*, 121 Colum. L. Rev. 1, 5 (2021) ("Since before the Founding, offices held for a term of years, in the absence of constitutional or statutory language to the contrary, were designed to be inviolable."). And, were there any doubt, *Marbury v. Madison* "emphatically" made this clear. 5 U.S. (1 Cranch) 137, 163 (1803) (holding that judicial review is available to adjudicate a fixed-tenured officer's right to office).

*Wiener* also disposes of the government's reliance on the *ultra vires* standard as requiring Cook to demonstrate that the president acted "contrary to a specific prohibition in the statute." Mot. at 10 (internal quotations and citations omitted). *Weiner* establishes that for-cause removal does not permit a President to remove an officer "merely because he wanted his own appointees." 357 U.S. at 356. If the Court could review that contention, it can review this one. The government further errs in urging—for the first time on appeal—the applicability of

7

the "clear and mandatory" standard of *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 722 (D.C. Cir. 2022).  That standard applies where there is a "statutory preclusion of review."  *Id.*  The government makes no such claim here, and this Court has long rejected the government's argument "that there are no judicially enforceable limitations on presidential actions, besides actions that run afoul of the Constitution or which contravene direct statutory prohibitions, so long as the President *claims* that he is acting pursuant to" a statute.  *Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322, 1332 (D.C. Cir. 1996).

## II.    The is Government is Not Likely to Succeed on the Merits

### A.    "For Cause" Does Not Mean "At Will."

The government's interpretation of "for cause" removal would turn the Federal Reserve into an at-will body.  That position is flawed as a statutory matter: "'for cause' does not mean the same thing as 'at will.'"  *Collins v. Yellen*, 594 U.S. 220, 256 (2021) (alteration adopted).  And it fails to appreciate the Federal Reserve's status as a "uniquely structured, quasi-private entity that follows in the distinct historical tradition of the First and Second Banks of the United States."  *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025).

### B.    The President's Attempt to Remove Governor Cook was Without "Cause"

#### 1.    The District Court Correctly Concluded that Pre-Office Conduct Does Not Constitute Cause.

The government insists that Governor Cook's allegedly wrongful conduct

8

prior to taking office satisfies the for cause removal standard. But the historical meaning of "for cause" belies that argument. "For cause" removal protection has long been anchored to "the *Humphrey's Executor* standard of 'inefficiency, neglect of duty, or malfeasance in office.'" *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477, 487 (2010). While considering the 1935 amendment that reinstated "for cause" removal protection for Board Governors, Congress made the affirmative decision to wait for the Supreme Court's decision in *Humphrey's Executor* before finalizing the language of the act. *See* Gary Richardson & David W. Wilcox, *How Congress Designed the Federal Reserve to be Independent of Presidential Control*, 39 J. of Econ. Perspectives 3, 229 (2025).

In May 1935, the Court published *Humphrey's Executor*, which confirmed the constitutionality of inefficiency, neglect of duty, or malfeasance in office ("INM") removal restrictions, expressly holding that Congress had the authority to "forbid the[] removal" of certain officers by the President "except *for cause.*" 295 U.S. at 629 (emphasis added). Three months later, Congress passed the Banking Act of 1935 to provide that the President could not remove Board members except "for cause." 12 U.S.C. § 242. Congress used "for cause" rather than "INM" to restore the 1913 language of the FRA, which took for granted that "for cause" meant INM.

Apart from INM, no other statutorily enumerated grounds for presidential removal of executive officers existed in the U.S. Code at the time of the FRA's

9

enactment in 1913. Today, other provisions of the U.S. Code contain specific grounds for presidential removal of government officials, but those additional grounds for removal were not statutorily enumerated at the time of the FRA's original enactment, and they cannot be incorporated after-the-fact into the statute. In 1935, the only statutorily enumerated grounds for presidential removal of executive officers were INM (*see* Manners & Menand, 121 Colum. L. Rev. at 72–73 app. A, B), confirming that Congress intended removal "for cause" to be limited to that standard.

To the extent that removal "for cause" extends beyond INM, the district court correctly held that such grounds must be "in-office conduct that is closely related to the INM grounds." Op. at 19. The canonical English case *Rex v. Richardson*, 1 Burrows, 517, 538 (1758), informed American courts' view about what category of non-office (including pre-office) conduct amounted to removable cause at the time of the FRA's enactment. That category of offenses was vanishingly small. It included only misconduct "(1) Such as have no immediate relation to his office, but are in themselves of *so infamous a nature, as to render the offender unfit to execute any public franchise.*" *State ex rel. Atty. Gen. v. McLain*, 58 Ohio St. 313, 320 (1898) (quoting *Rex v. Richardson*, 1 Burrows at 538) (emphasis added). In the decades surrounding the FRA's enactment, no fewer than eight state supreme courts cited

*Rex v. Richardson* in defining removable cause.[3]

The government asserts "the district court had no problem confirming that the President would have cause to remove Cook if she was convicted of mortgage fraud based on her conduct before taking office" and insists "criminal conviction is not a prerequisite for removal under 12 U.S.C. § 242." Mot. at 2. But the district court did not suggest that conviction was a prerequisite for removal nor was it contradicting its pre- versus post-office distinction. What the district court correctly noted was that "where an officer is convicted of a serious crime and incarcerated while in office . . . [s]uch a conviction *would obviously interfere with the ability of an officer to effectively and faithfully carry out their in-office duties*," or in other words, neglect of duty. Op. at 21–22 (emphasis added).[4]

### C. Governor Cook Was Deprived of Her Statutory and Constitutional Rights to Notice and an Opportunity to Be Heard.

Even assuming that the President's stated reasons could satisfy the "for cause" standard, his purported firing of Governor Cook would still be unlawful. That is

---

[3] *See id.*; ECF 17 at 12 (collecting cases).

[4] Instead of looking to the history, statutory context and precedent establishing "for cause" protection as a term of art anchored to the "inefficiency, neglect of duty, or malfeasance in office" standard established in *Humphrey's Executor*, the government continues to rely exclusively on dictionary definitions to advance its preferred reading of "cause." That interpretive approach is incorrect, and as the district court pointed out, it even fails on its own terms. *See* Op. at 9–10.

11

because Governor Cook was deprived of her statutory right to notice and a hearing under both the FRA and the Due Process Clause of the Fifth Amendment.

The district court did not evaluate whether the FRA's for-cause removal provision afforded Governor Cook the right to notice and a hearing, as it concluded that the Due Process Clause provided an independent source of that right. But the Supreme Court has made clear that for-cause removal provisions like the FRA's establish a *statutory* right to notice and a hearing before an official may be removed.

The critical cases are *Reagan* and *Shurtleff v. United States*, 189 U.S. 311 (1903). *Reagan* recognized a "rule" that "where causes of removal are specified by constitution or statute, as also where the term of office is for a fixed period, notice and hearing are essential." 182 U.S. at 425. *Shurtleff* reiterated that rule, writing (in the context of an INM statute) that "if the removal is sought to be made for those causes, or either of them, the officer is entitled to notice and a hearing." 189 U.S. at 314.[5]

Together, *Shurtleff* and *Reagan* require notice and a hearing when a President seeks to remove an official with for-cause-removal protections. The government's

---

[5] Both *Reagan* and *Shurtleff* involved statutes dealing with federal officers, not employees, and the officer in *Shurtleff* was a principal officer. No hearing was necessary in *Reagan* because Congress had not specified any causes, *see supra* Section I.A, or in *Shurtleff* because the Court held that the officer, who had no fixed term, could be removed for causes other than those specified in the statute, *see* 189 U.S. at 317.

attempt to rewrite this "well-settled" rule fails. *PHH Corp. v. CFPB,* 881 F.3d 75, 135 (D.C. Cir. 2018) (Griffith, J., concurring) (citing *Reagan* and *Shurtleff*). The government asserts that one has no statutory right to notice and a hearing unless those specific protections are "very clear and explicit," and that Governor Cook is not entitled to notice and a hearing because the FRA does not use the words "notice and a hearing." ECF 13 at 19. But neither did the statutes in *Shurtleff* or *Reagan*, and so the government's distinction of those cases is no distinction at all.

The same conclusion follows from the Due Process Clause. As an officer with for-cause removal protection, Governor Cook has a property interest in her position. "A property interest exists if the employee can be removed only for cause." *Esparraguera v. Dep't of the Army*, 101 F.4th 28, 33 (D.C. Cir. 2024) (citations and quotations omitted). The Government's sole response is to claim that because Governor Cook is an *officer* of the United States, not "a mere public employee," she "ha[s] no property interest in her public office and was thus owed no notice or opportunity to be heard." Mot. at 18. But no case the government cites comes close to recognizing that distinction.

First, the government's theory is foreclosed by the foundational precedent of *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803). *Marbury*, which considered the validity of William Marbury's appointment as justice of the peace—an *officer* position requiring Presidential appointment and Senate confirmation makes plain

13

that the critical distinction regarding a property right is whether the holder of a position serves *at will*, not whether she is an officer or employee.  As Chief Justice Marshall explained:

> [W]hen the officer is *not removable at the will of the executive*, the appointment is not revocable, and cannot be annulled. It has conferred *legal rights which cannot be resumed*.

*Id.* at 162 (emphases added).

The cases the government cites in support of its proposed "officer/employee" distinction lend no support to its theory.  Rather, those cases stand for the proposition that "neither the tenure nor salary of federal officers is constitutionally protected from *impairment by Congress*." *Glidden Co. v. Zdanok*, 370 U.S. 530, 534 (1962) (emphasis added).  That conclusion is entirely consistent with the notion that PAS officers with for-cause removal protection enjoy a property interest in their positions. As the Court put it in *Cleveland Board of Education v. Loudermill*, "property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source" such as a statute.  470 U.S. 532, 538 (1985) (internal citation and quotation marks omitted).  The "statute . . . creates such an interest." *Id.*  Thus, by repealing or amending the very statute that gives rise to a property right—here, the Federal Reserve Act—a legislature could eliminate that right.  But the Fifth Amendment prevents the *President* from unilaterally terminating a property right conferred by

14

statute.

The government's other cases are even further afield. *Crenshaw v. United States* held only that an *employee*—a cadet midshipman *without "for cause" removal protection*—lacked "any vested interest or contract right in his office *of which congress could not deprive him*." 134 U.S. 99, 104 (1890) (emphasis added). *Crenshaw* is thus inapposite for multiple reasons. *Taylor v. Beckham,* 178 US 548 (1900), and *Baker v. Carr*, 369 US 186 (1962), considered whether *candidates for elected office*—not PAS officers with for-cause removal protections—had a property right to "public office." *Baker,* 369 U.S. at 232. Governor Cook is not a losing candidate for office; she is a public official protected by removal only for cause.

Governor Cook was deprived of a forum in which to offer any evidence. The government seems to blame her for that shortcoming, stating she never "sought to offer any evidence . . . that would explain her actions." Mot. at 19. It cannot be the case that deprivation of due process is harmless unless the person informally raises her arguments ahead of the proceeding to which she is entitled.[6]

### III.    The Remaining Factors Favor Governor Cook.

---

[6] The complete property records reveal the opposite. *See, e.g*., *Fed Governor Lisa Cook claimed 2nd residence as 'vacation home,' undercutting Trump fraud claims*, Assoc. Press (Sept. 12, 2025), https://apnews.com/article/federal-reserve-lisa-cook-trump-852820c83e5001ec3b6e2d14047965c9 (affirming, based on the review of bank documents, that Governor Cook designated her Atlanta property for use as a "Vacation Home").

15

The Federal Reserve's independence—even and especially from the President—is a result of intentional Congressional design, the wisdom of which has borne out over decades. The government's argument challenges all of that, threatening the stability and predictability of economic markets worldwide.[7] The equitable factors weigh heavily against a stay, which would undermine more than a century of the Federal Reserve's independence and have dire repercussions for the economy.

As Justice Kavanaugh previously observed, it "may be worthwhile to insulate" the Board "from direct presidential oversight or control" because of the Board's "power to directly affect the short-term functioning of the U.S. economy by setting interest rates and adjusting the money supply." *Separation of Powers During the Forty-Fourth Presidency and Beyond*, 93 Minn. L. Rev. 1454, 1474 (2009). The public's "belie[f] that the central bank is free from interference and that the law [governing the bank] is unlikely to change swiftly" is crucial for ensuring economic stability. Cristina Bodea & Raymond Hicks, *Price Stability and Central Bank Independence*, 69 Int'l Orgs. 35, 38 (2015).

---

[7] "Even the perception that monetary-policy decisions are politically motivated, or influenced by threats that policy makers won't be able to serve out their terms of office, can undermine public confidence . . ." Paul Volcker, Alan Greenspan, Ben Bernanke & Janet Yellen, *America Needs an Independent Fed*, Wall St. J. (Aug. 5, 2019), https://www.wsj.com/articles/america-needs-an-independent-fed-11565045308.

The government's argument threatens that. Granting a stay (allowing the removal of Governor Cook) would harm Congress, which "has an interest in ensuring that Federal Reserve Board members are removed for only statutorily permitted reasons, and preventing the President from thwarting the very ends which Congress sought to realize by definitively fixing the term of office." Op. at 47 (internal quotation marks and alterations removed). It would harm the public, which has an interest in requiring the executive branch to "abide by the federal laws that govern their existence and operations." *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). And as economists have warned, everyday Americans ultimately would pay the price: higher prices "via higher inflation and higher interest rates" that result "when central bank independence is lost."[8]

Those profound risks to the financial markets are imminent. At all times during this litigation, Governor Cook has been performing her duties as a duly nominated and confirmed member of the Board. Critically, Governor Cook's duties have included preparing for next week's Federal Open Market Committee ("FOMC") policy meeting, at which she and other FOMC members will review the Federal Reserve's monetary policy, issue statements on market outlook, and vote on

---

[8] Ian Smith, Emily Herbert & Kate Duguid, *Donald Trump's Attack on Fed Shifts Market Bets on Interest Rates and Inflation*, Fin. Times (Aug. 26, 2025), https://www.ft.com/content/d8a8d068-18ba-4e29-a69f-6c155ffc67f3.

setting interest rates. A stay pending appeal would threaten Governor Cook's participation in next week's meeting and potentially plunge the FOMC's operations into turmoil. The government offers no justification to explain why this Court should sanction such a severe disruption of the status quo.

The government spares only a sentence to acknowledge the catastrophic effect that undermining the independence of the Federal Reserve Board is sure to have on the economy. Mot. at 23. But the government's failure to acknowledge the problem will not make it go away. Over the past several months, as President Trump has threatened the Federal Reserve's independence, markets have reacted quickly and sharply.[9] Throughout this litigation, Governor Cook has continued to serve in her role, so a grant of a stay from this Court would be the first signal from the courts that her removal may be lawful. This Court's intervention—particularly before it carefully considers the merits of the government's argument and all of its repercussions—would thus cause needless confusion in a sensitive economic area. And once the credibility of the Federal Reserve as an independent body is damaged, it will not easily be restored.

In claiming that it would be irreparably injured if it does not receive a stay

---

[9] *See* Polo Rocha, *Trump's Criticism of Powell Is Shaking Markets' Faith in Fed's Independence*, Investopedia (Apr. 21, 2025), https://www.investopedia.com/trump-criticism-of-powell-is-shaking-markets-faith-in-federal-reserve-independence-11719211.

18

here, the government relies exclusively (Mot. at 20) on cases involving officials whom the President asserts he has unilateral power to remove. But here, the government expressly disclaims any such constitutional argument. Mot. at 4–5. The government cannot and does not explain why the President is irreparably harmed here when the Federal Reserve continues to operate—as Congress intended—free from direct presidential control. The government's irreparable harm arguments merely reinforce the President's desire to change *policy* at the Federal Reserve by effectuating the removal in an emergency litigation posture.

In particular, the government's reliance on *Trump v. Boyle*, 145 S. Ct. 2653 (2025) and *Trump v. Wilcox* is misplaced. Though the factors in those cases weighed in favor of the government, the Supreme Court specifically disclaimed the applicability of those cases to this one. The Court acknowledged that "[t]he Federal Reserve is a uniquely structured, quasi-private entity that follows in the distinct historical tradition of the First and Second Banks of the United States," unlike the Consumer Product Safety Commission or the National Labor Relations Board. *Wilcox*, 145 S. Ct. at 1415. The Court explained further that its decision in *Wilcox* did not "implicate the constitutionality of for-cause removal protections for members of the Federal Reserve's Board of Governors." *Id.* And it followed that statement by warning lower courts that "interim orders" like the one issued in *Wilcox* tell lower courts how they "should exercise [their] equitable discretion." *Boyle*, 145 S. Ct. at

19

2654.[10]  Taking those statements together can only mean that—given the Federal Reserve's historical independence—the stay factors cash out differently when it comes to the removal of a Federal Reserve Board member than they did in *Wilcox* and *Boyle*.

Nor can the government successfully argue that Governor Cook would not be irreparably harmed by her removal from the Board.  Indeed, the government's claim that it needs relief in advance of the September 16 FOMC meeting (Mot. at 4) cannot be squared with its assertion that Governor Cook has no "clear and present need" (Mot. at 22) to participate as a duly appointed governor of the Federal Reserve Board.  The very fact of that meeting confirms that even a temporary absence from the Board would irreparably injure Governor Cook's ability to participate as a governor.  *See Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974).  And to be clear, Governor Cook is not asking to be reinstated—she has been continuously serving in her Senate-confirmed role.  Moreover, President Trump has made clear that he intends to and can fill Governor Cook's seat by the time even an expedited resolution of this case could occur.  If a stay is granted, there may be no seat to which Governor

---

[10] The government's suggestion (Mot. at 20 n.2) that courts lack equitable authority to "reinstate[]" Governor Cook cannot be squared with the general rule that, when courts find a presidential action unlawful, they can "enjoin the officers who attempt to enforce the President's directive." *Franklin v. Massachusetts*, 505 U.S. 788, 828 (1992) (Scalia, J., concurring in part and concurring in the judgment).  And, again, Governor Cook has remained in office and the government's motion seeks to change that.

Cook could return if she prevails on the merits—further demonstrating the irreparable harm she faces.

The government also fails to offer any sort of stopping point or limiting principle to its argument. If this Court accepts the government's argument, the President would be given the power to make unsubstantiated charges for any type of alleged misconduct to remove any other member of the Board.  At a time when the President is publicly pressuring the Chair of the Federal Reserve to adopt his favored monetary policy, any signal from the courts that the Federal Reserve's independence is in jeopardy risks unsettling markets. This moment calls for orderly process and sober deliberation—not a destabilizing rush to judgment.

## CONCLUSION

For the foregoing reasons, Appellant's motion should be denied.

September 13, 2025             Respectfully Submitted,

                            */s/ Abbe David Lowell*
                            Abbe David Lowell
                            David A. Kolansky*
                            Isabella M. Oishi
                            Jack Bolen*
                            LOWELL & ASSOCIATES, PLLC
                            1250 H Street, N.W., Suite 250
                            Washington, DC 20005
                            T: (202) 964-6110
                            F: (202) 964-6116
                            ALowellpublicoutreach@lowellandassociates.com
                            DKolansky@lowellandassociates.com
                            IOishi@lowellandassociates.com
                            JBolen@lowellandassociates.com

*Attorneys for Governor Lisa Cook*

Norman L. Eisen
Tianna J. Mays*
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, DC 20003
T: (202) 601-8678
norman@democracydefenders.org
tianna@democracydefenders.org

*Attorneys for Governor Lisa Cook*

*\*Application for admission forthcoming*

22

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P 27(D)(2)(A)

Pursuant to Fed. R. App. P. 32(g), I hereby certify that the preceding opposition brief complies with the type-volume limitation of the Rules, containing 5,042 words, excluding the parts of the document exempted by Federal Rules of Appellate Procedure 32(f). I further certify that the document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365, in 14-point Times New Roman font.

*/s/ Abbe David Lowell*
Abbe David Lowell

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2025, I caused this document to be filed through the ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Abbe David Lowell*
Abbe David Lowell