# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

LISA D. COOK,
in her official capacity as a member of the Board of Governors of the
Federal Reserve System and her personal capacity,

Plaintiff-Appellee,

v.

DONALD J. TRUMP, in his official capacity
as President of the United States, *et al.*,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Columbia

# REPLY IN SUPPORT OF STAY PENDING APPEAL AND
# ADMINISTRATIVE STAY

BRETT A. SHUMATE
   *Assistant Attorney General*

YAAKOV M. ROTH
   *Principal Deputy Assistant Attorney General*

ERIC D. MCARTHUR
   *Deputy Assistant Attorney General*

MARK R. FREEMAN
MICHAEL S. RAAB
DANIEL AGUILAR
LAURA E. MYRON
   *Attorneys, Appellate Staff*
   *Civil Division*
   *U.S. Department of Justice*
   950 Pennsylvania Avenue NW
   Washington, DC 20530
   (202) 305-1754

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

## A. Parties and Amici

Plaintiff is Lisa D. Cook, in her official capacity as a member of the Board of Governors of the Federal Reserve System and her personal capacity. Defendants are Donald J. Trump, in his official capacity as President of the United States of America; the Board of Governors of the Federal Reserve System both collectively and in their individual official capacities; and Jerome H. Powell, in his official capacity as Chair of the Board of Governors of the Federal Reserve System.

Azoria Capital, Inc. and James T. Fishback appeared as amici curiae in the district court. K.L. Smith, Jason Goodman, Martin Akerman, and William Michael Cunningham filed pro se motions to appear as amici curiae. There have been no intervenors.

The Separation of Powers Clinic has moved to file an amicus brief in support of defendants in this Court.

## B. Ruling Under Review

The ruling under review is an order granting a preliminary injunction (Dkt. 28) and opinion (Dkt. 27) that the district court (Judge Jia M. Cobb) issued on September 9, 2025. The opinion and order are attached to this motion.

## C. Related Cases

This case has not previously been before this Court.

*Wilcox v. Trump*, No. 25-5057 (D.C. Cir.); *Harris v. Bessent*, No. 25-5055 (D.C. Cir.); *Grundmann v. Trump*, No. 25-5165 (D.C. Cir.); *Slaughter v. Trump*, No. 25-5261 (D.C. Cir.), and *Boyle v. Trump*, No. 25-1687 (4th Cir.), involve challenges to the President's removal of principal officers from multimember agencies with statutory removal restrictions.

/s/ Laura E. Myron
Laura E. Myron
  *Attorney, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................. 1

ARGUMENT .................................................................................................... 2

I.     The President's "Cause" Determination Is Not Subject To
       Judicial Second Guessing ..................................................................... 3

II.    The District Court Misconstrued "For Cause" ..................................... 5

III.   Cook's Due-Process Claim Fails .......................................................... 8

IV.   The Remaining Factors Support A Stay ............................................ 11

CONCLUSION ............................................................................................... 13

CERTIFICATE OF COMPLIANCE

## INTRODUCTION

Removal "for cause" is a capacious standard that Congress has vested in the President's discretion. Even if the President's determination were reviewable—and over a century of caselaw suggests it is not—review would be limited to the rigorous standard for *ultra vires* claims. Cook does not argue that she meets that standard, nor could she. The district court's conclusion that "cause" excludes pre-confirmation conduct finds no support in text or precedent, and even Cook's counsel did not advocate for that standard below.

Cook's due-process claim is equally meritless. We are aware of no case extending due-process protections for employees to principal officers of the United States, and nothing in the text of 12 U.S.C. § 242 purports to do so. That makes good sense—unlike "civil servants" who generally do not wield "significant authority," *Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 506 (2010), principal officers help the President discharge constitutional duties and wield significant executive power, *Seila Law LLC v. CFPB*, 591 U.S. 197, 203-04 (2020). Requiring the President to afford them a "formal evidentiary hearing" (Op. 38) before removal is untenable. And even if Cook had a property interest in her office, she still has provided no basis to believe that a hearing would have made a difference.

# ARGUMENT

## I. The President's "Cause" Determination Is Not Subject to Judicial Second-Guessing

**A.** When a statute gives a power of removal "for cause," without any specification of the causes, the removal decision "is a matter of discretion and not reviewable." *Reagan v. United States*, 182 U.S. 419, 425 (1901); *see* Mot. 8-9. Cook asserts (Opp. 6) that *Reagan*'s non-reviewability holding applies only to offices without fixed terms. But the sentence above did not rely on the petitioner's lack of a fixed term. And there is no reason to think the President's discretionary determination of what constitutes cause is any more amenable to judicial review simply because it concerns an officer with a fixed term. This Court has confirmed as much by holding that a fixed term of office "is a ceiling, not a floor, on the length of service," *Severino v. Biden*, 71 F.4th 1038, 1045 (D.C. Cir. 2023)—so a fixed term alone confers no removal protection at all. *Accord Parsons v. United States*, 167 U.S. 324, 335, 343 (1897) (similar).

Even if *Reagan* were factually distinguishable, Cook does not refute the contemporaneous treatise announcing the same rule or the series of state-court decisions demonstrating that courts broadly understood the

power to remove for "cause" was discretionary and unreviewable.[1]

**B.** At minimum, Cook would have to show that the President acted *ultra vires*. *Accord* Compl. ¶ 66 (alleging that removal was "*ultra vires* and a clear violation of law"). Cook has identified no statutory cause of action, and her objection is that the President exceeded his statutory authority. The only available form of judicial review is therefore an *ultra vires* claim. *See Federal Express Corp. v. U.S. Dep't of Commerce*, 39 F.4th 756, 763 (D.C. Cir. 2022).

Cook argues that *Wiener v. United States*, 357 U.S. 349 (1958), means review is not limited to *ultra vires* review. But *Wiener* was a suit for backpay; that is wholly different from a "nonstatutory review" suit "seeking injunctive relief"—in other words, what is "commonly known as an *ultra vires* claim." *Federal Express*, 39 F.4th at 763.

This Court has made clear that *ultra vires* claims are reserved for instances of "extreme" error; action that is "'patently a misconstruction of the Act, that disregards a specific and unambiguous statutory directive, or that violates some specific command of a statute." *Changji Esquel Textile*

---

[1] Montgomery H. Throop, *A Treatise on the Law Relating to Public Officers* § 396, at 387 (1892); *see also, e.g., United States ex rel. Garland* v. *Oliver*, 6 Mackey 47, 53, 56 (D.C. 1887); *Trimble* v. *People*, 34 P. 981, 985 (Colo. 1893); *City of Hoboken* v. *Gear*, 3 Dutch. 265, 288 (N.J. 1859); *People* v. *Stout*, 19 How. Pr. 171 (N.Y. Sup. Ct. Gen. Term 1860) (opinion of Sutherland, J.).

*Co. v. Raimondo*, 40 F.4th 716, 722 (D.C. Cir. 2022).² Cook must show that the President "has plainly and openly crossed a congressionally drawn line in the sand." *Federal Express*, 39 F.4th at 765; *see also Nuclear Regulatory Comm'n v. Texas*, 605 U.S. 665, 681 (2025).

While *Federal Express* and *Changji Esquel* considered challenges to agency, not residential, action, that difference if anything makes Cook's burden even higher. Even assuming presidential action is subject to an *ultra vires* claim, "review must be exceedingly deferential" given the "President's discretion in exercising core Article II responsibilities." *American Foreign Service Association v. Trump*, 2025 WL 1742853, at *2 (D.C. Cir. June 20, 2025) (granting stay pending appeal).

The government's reading is far from "utterly unreasonable," *Federal Express*, 39 F.4th at 766, it is correct. And the President's determination that Cook's financial misrepresentation constituted sufficient cause for removal is both an unreviewable exercise of the discretion Congress vested in him, *see Dalton v. Specter*, 511 U.S. 462, 477 (1994), and eminently

---

² Cook suggests that the government waived reliance on the *ultra vires* standard by raising it for the first time on appeal. But Cook pled Count I of her complaint as an *ultra vires* claim and the government responded that there was no "clear-cut abuse of discretion warranting judicial intervention." Dkt. 23 at 5. In all events, *ultra vires* is the only possible cause of action given the lack of a statutory review provision.

reasonable, as it concerns whether Cook can be trusted to act with forthrightness, care, and disinterest in managing the U.S. money supply.

## II. The District Court Misconstrued "For Cause"

Under any standard, an apparent misrepresentation in loan documents that garners a financial benefit to the applicant is enough to justify removing someone from a senior financial regulatory role. "[F]or cause" in its ordinary usage clearly encompasses such a determination, and nothing in the statute forbids consideration of misconduct that concerns a personal matter, that occurs at a certain time, or that may not result in a criminal conviction.

The district court erred when it imposed additional restrictions on the President's removal power that do not appear in the statutory text. Neither the statute nor the contemporaneous 1933 Black's Law Dictionary definition of the term "for cause" contains an "in office" limitation. *See* 12 U.S.C. § 242; Black's Law Dictionary 796 (3d ed. 1933) (defining "for cause"); *but see* Op. 13-19. "It is a fundamental principle of statutory interpretation that 'absent provision[s] cannot be supplied by the courts.'" *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 677 (2020) (quoting *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019)). That "principle applies not only to adding terms not found in the statute,

5

but also to imposing limits on an agency's discretion that are not supported by the text." *Id.* In construing "for cause" to be limited to only conduct occurring "in office," the court "alter[ed], rather than [] interpret[ed]" the statute. *Id.*

In defending the district court's narrow interpretation, Cook misses three dispositive points. *First*, "[a]textual judicial supplementation is particularly inappropriate when, as here, Congress has shown that it knows how to adopt the omitted language or provision." *Rotkiske*, 589 U.S. at 14. Congress, in both contemporaneous statutes and those enacted since, expressly included an "in office" limitation, *see e.g.*, 15 U.S.C. § 41 ("malfeasance in office"); 29 U.S.C. § 153 (same).[3] Yet Congress instead chose "for cause" for the Federal Reserve Act. "For cause" contemplates a broader range of considerations because it is not limited to "in-office" grounds. The inference the district court drew from its survey of the U.S. Code was backwards, reading in limitations that Congress knew how to impose but did not.

*Second*, Cook's insistence that "for cause" is synonymous with

---

[3] *See, e.g.*, 5 U.S.C. §§ 1202(d), 1211(b), 7104(b); 12 U.S.C. § 5491(c)(3); 26 U.S.C. § 7443(f); 29 U.S.C. § 661(b); 30 U.S.C. § 823(b)(1); 38 U.S.C. § 7101(b)(2); 42 U.S.C. §§ 5841(e), 7171(b)(1), 7412(r)(6)(B); 45 U.S.C. § 154; 46 U.S.C. § 46101(b)(5); 49 U.S.C. §§ 1111(c), 1301(b)(3).

narrower formulations (Opp. 9-10) ignores that the Supreme Court has specifically contrasted these provisions, noting that "for cause" "appears to give the President *more* removal authority than other removal provisions." *Collins v. Yellen*, 594 U.S. 220, 255-56 (2021) (emphasis added). And precedent dating back centuries is in accord. Indeed, the district court's categorical exclusion of any pre-office misconduct from the domain of "cause" is refuted by the cases Cook cites (Opp. 10-11), which make clear that pre-confirmation misconduct can constitute "cause" for removal where, as here, it bears on the officer's fitness to serve.

*Third*, the district court's limiting construction of "cause" would prohibit the President from removing a principal officer when there is unrebutted evidence of serious misconduct bearing on her fitness for office. On the district court's theory, the President could not remove a Board Governor who was revealed to have committed massive financial fraud—provided it happened before confirmation. That cannot be right. And such a view would raise substantial questions under Article II.

For all these reasons, Cook's counsel was correct below to disclaim the categorical rule adopted by the district court. Hr'g Tr. at 17:10-25 (Aug. 29, 2025). Cook's position below was that pre-office misconduct could be grounds for removal, depending on careful balancing of factors, including

severity, timing, and relevance to the office. *See id.* But the district court acknowledged that it would not second-guess the President's discretionary weighing of such factors, Op. 26 n.9, and instead adopted a bright-line rule urged by neither party.

Finally, to the extent Cook suggests that the President removed her based on a policy disagreement relating to interest rates, that was not the basis of the district court's injunction and is incorrect. The President's letter made clear that he was acting based on her "deceitful and potentially criminal conduct" in connection with the mortgage agreements. The Court should decline "to probe the sincerity of the [President's] stated justifications" for an action when the President has identified a facially permissible basis for it. *Trump v. Hawaii*, 585 U.S. 667, 702 (2018); *see also American Foreign Serv. Ass'n*, 2025 WL 1742853, at *3 (explaining that *Hawaii* did not "inspect" the President's "rationale").

### III. Cook's Due-Process Claim Fails

A "public office is not property" and Cook's role as a principal officer "to the public is inconsistent with either a property or a contract right." *Taylor v. Beckham*, 178 U.S. 548, 576-77 (1900). Cook's reliance on *Reagan* and *Shurtleff v. United States*, 189 U.S. 311 (1903), is misplaced, as both cases concerned a *statutory* right to notice and a hearing, not the

8

*constitutional* right on which the district court relied.[4] And both cases upheld the removal of officers who did not receive a hearing. Nor does *Marbury v. Madison*, 5 U.S. 137 (1803), help Cook, as it concerned Marbury's "right to [a] commission" to demonstrate his appointment to an office, *id.* at 172-73, not whether he held a property interest in his office.

Cook's due-process argument fundamentally rests on her view that the property interest that tenured employees have in their jobs applies with full force to principal executive officers of the United States. Opp. 13. She cites no case that has so held. And her theory fundamentally misunderstands the purpose of removal restrictions. Congress has enacted statutory removal restrictions for various officers to ensure that they "act * * * independently of executive control," and "exercise [their] judgment without the leave or hindrance of any other official." *Humphrey's Executor v. United States*, 295 U.S. 602, 629 (1935). Congress did not, in enacting restrictions for these purposes, confer on principal officers an individual proprietary interest in their office.

---

[4] Cook does renew her argument that the Federal Reserve Act entitled her to notice and a hearing before removal. But the district court did not adopt that argument. Op. 27-28. Nor should this Court. Congress knows how to confer these procedural protections and has done so elsewhere. *See, e.g.*, 5 U.S.C. § 7104(b); 22 U.S.C. § 4135(d); 29 U.S.C. § 153(a); 38 U.S.C. § 7101(b)(2); 5 U.S.C. § 7521(a). It did not extend those protections to members of the Board of Governors.

And there is no basis to extend cases considering property interests held by civil servants in their employment to the fundamentally different duties owed by constitutional officers to the citizenry. The Appointments Clause "cares not a whit" about employees but controls the appointment of officers who wield "significant authority." *Lucia v. SEC*, 585 U.S. 237, 245 (2018). "The people do not vote for the 'Officers of the United States,'" *Free Enterprise*, 561 U.S. at 497-98, who maintain their connection to the public through the President's oversight. A stake in the office for their own personal benefit is unsupported by precedent and incompatible with constitutional structure.

In any event, Cook has not shown that a hearing would have made a difference. Even assuming she is right to insist that she was not required to bring any defense to the President's attention between August 20 (when the President put her on notice) and August 25 (when he effectuated the termination), she *was* required—as an, "essential element" of her due-process claim—to identify what material facts were in dispute. *Codd v. Velger*, 429 U.S. 626, 627 (1977). Cook has failed to do so. She has no answer to *Codd* and has provided no explanation for the contradictory representations apparent on the face of her mortgage agreements, *see* Dkt. 1-4 at 1, and that alone is grounds to stay the extraordinary equitable relief

she secured below.

## IV. The Remaining Factors Support A Stay

Merits aside, the Supreme Court has made abundantly clear that "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power" than the removed officer faces from a stay. *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025); *accord* Order, *LeBlanc v. U.S. Privacy and Civil Liberties Oversight Board*, No. 25-5197 (D.C. Cir. July 1, 2025). Cook points out that the Court reserved whether the Federal Reserve removal restrictions might be constitutional even if other removal restrictions for executive officers are not. But that is a distinction going to the *merits* (and the constitutional issue has not even been presented here). On the *equities*, the Supreme Court's determinations in *Wilcox* and *Boyle* apply equally here.

Cook asserts that the equities balance differently here because she supposedly "has been continuously serving" since the President's removal. Opp. 20. Assuming that were true, that only underscores the need for a stay, because, as the Supreme Court has emphasized, the "Government faces greater risk of harm from * * * allowing a removed officer to continue exercising the executive power" than the harm to the removed officer from a stay. *Boyle*, 145 S. Ct. at 2654.

The rest of Cook's arguments on the equitable factors rest on the notion that her removal reflects a "desire to change *policy* at the Federal Reserve," thus implicating the value of Federal Reserve independence. Opp. 19. The district court did not issue its injunction on that basis, however, Op. 27 n. 10, and it provides no basis to deny a stay. The public and the Executive share an interest in ensuring the integrity of the Federal Reserve, and that requires respecting the President's statutory authority to remove Governors "for cause" when such cause arises.

## CONCLUSION

The Court should stay the district court's injunction.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

YAAKOV M. ROTH
  *Principal Deputy Assistant*
    *Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
MICHAEL S. RAAB
DANIEL AGUILAR
<u>/s/Laura E. Myron</u>
LAURA E. MYRON
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

**CERTIFICATE OF COMPLIANCE**

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,583 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Georgia, a proportionally spaced typeface.

                                                */s/ Laura E. Myron*
                                                LAURA E. MYRON