ORAL ARGUMENT NOT YET SCHEDULED

No. 25-5326

---

# In the United States Court of Appeals for the District of Columbia Circuit

---

LISA D. COOK,
in her official capacity as a member of the Board of Governors of the
Federal Reserve System and her personal capacity,
*Plaintiff-Appellee,*

v.

DONALD J. TRUMP,
in his official capacity as President of the United States, *et al.*,
*Defendants-Appellants.*

---

On Appeal from the United States District Court for the District of
Columbia, No. 1:25-cv-02903 (Hon. Jia M. Cobb)

---

**BRIEF OF *AMICI CURIAE* AZORIA CAPITAL, INC. AND JAMES T. FISHBACK IN SUPPORT OF DEFENDANT-APPELLANT DONALD J. TRUMP'S MOTION FOR STAY PENDING APPEAL**

---

Anne Marie Mackin
LEX POLITICA PLLC
#129 7415 SW Parkway
Building 6, Suite 500
Austin, TX 78735
(512) 354-1785
amackin@lexpolitica.com

*Counsel for Amici Curiae*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to  Circuit Rule 28(a)(1), *amici* submit this certificate.

**Parties and *Amici*.** Except for the following, all parties, intervenors, and *amici* appearing before the district court and in this Court are listed in Defendant-Appellant's Rule 28(a)(1) certificate: Separation of Powers Clinic has filed a motion for leave to appear in this Court as *amicus curiae*.

**Rulings Under Review.** The ruling under review is a September 9, 2025 opinion (Doc. 27) and order (Doc. 28) granting a temporary restraining order. These documents are attached to Defendants-Appellants' Emergency Motion for a Stay Pending Appeal and Administrative Stay.

**Related Cases.** The related cases are listed in Defendants-Appellants' Rule 28(a)(1) certificate.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, I, the undersigned counsel for *amici curiae*, make the following disclosures:

1. Azoria Capital, Inc., is a privately held corporation with no parent corporation and no publicly held corporation that owns 10% or more of its stock.

2. James T. Fishback is an individual and thus has no such disclosures.

Date: September 15, 2025

/s/ Anne Marie Mackin
Anne Marie Mackin
LEX POLITICA PLLC
#129 7415 SW Parkway
Building 6, Suite 500
Austin, TX 78735
(512) 354-1785
amackin@lexpolitica.com

*Counsel of Record for Azoria Capital, Inc. and James T. Fishback*

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ii

CORPORATE DISCLOSURE STATEMENT .......................................... iii

TABLE OF CONTENTS ........................................................... iv

TABLE OF AUTHORITIES ......................................................... v

INTEREST OF *AMICI CURIAE* ................................................. 1

SUMMARY OF ARGUMENT ..................................................... 3

ARGUMENT ....................................................................... 6

   I.   A Governor Accused of Mortgage Fraud Cannot Credibly Supervise the Financial System and the President has Removal Authority to Preserve Institutional Integrity. ...................................... 6

   II.  Forward Guidance—the Federal Reserve's Principal Monetary Tool—Depends Entirely on Credibility. ................................. 11

   III. Plaintiff's Claims About Independence and Market Stability Invert the Real Risks. ................................................ 13

CONCLUSION ...................................................................... 15

# TABLE OF AUTHORITIES

## Statutes

12 U.S.C. § 242 ................................................................................ 6

## Other Authorities

Alisdair McKay, Emi Nakamura & Jón Steinsson, The Power of
    Forward Guidance Revisited, 106 AM. ECON. REV. 3133 (2016);
    Edward Nelson, *The Emergence of Forward Guidance as a Monetary
    Policy Tool*, Fin. & Econ. Discussion Series, 2021-033 (Bd. of
    Governors of the Fed. Rsrv. Sys. 2021),
    https://doi.org/10.17016/FEDS.2021.033 ............................................. 12

Antonios Sangvinatsos, *The Expectations Hypothesis* (Univ. of S. Cal.,
    Marshall Sch. of Bus., Working Paper, Mar. 29, 2008),
    https://pages.stern.nyu.edu/~sternfin/asangvin/ExpHyp.pdf .............. 12

Board of Governors of the Federal Reserve System, *Review of the
    Federal Reserve's Supervision and Regulation of Silicon Valley Bank*
    (Apr. 28, 2023), https://www.federalreserve.gov/publications/files/svb-
    review-20230428.pdf ........................................................................ 14

Brian Schwartz, *et al.*, *DOJ Opens Criminal Investigation Into Fed's
    Cook, Issues Subpoenas*, Wall St. J. (Sept. 4, 2025, at 2:50 pm ET),
    https://www.wsj.com/politics/policy/lisa-cook-justice-department-
    probe-e7e801a6?mod=author_content_page_1_pos_1 .......................... 3

Lindsay Whitehurst & Christopher Rugaber, *Fed Governor Lisa Cook
    claimed 2nd residence as 'vacation home,' undercutting Trump fraud
    claims*, AP News (Sept. 12, 2025 at 7:07 pm CT),
    https://apnews.com/article/federal-reserve-lisa-cook-trump-
    852820c83e5001ec3b6e2d14047965c9 .................................................... 8

Steve Roberts, *et al.*, *Memorandum to James T. Fishback, CEO, Azoria
    Capital, Inc.: President Trump's Authority to Remove Governor Lisa
    D. Cook "For Cause" Under 12 U.S.C. § 242* (Lex Politica, PLLC, Aug.
    22, 2025), https://investazoria.com/wp-
    content/uploads/2025/08/Azoria-Legal-Memo-Governor-Cook.pdf ........ 3

## INTEREST OF *AMICI CURIAE*[1]

Azoria Capital, Inc. ("Azoria") is an American investment firm that actively manages investments in U.S. Treasury securities and interest rate derivatives. James T. Fishback, Azoria's CEO, leads these efforts, drawing on his expertise in capital markets to navigate the economic impacts of monetary policy and regulatory decisions.

Azoria and Mr. Fishback have a profound interest in this case, as their business is directly and materially impacted not only by decisions of the Federal Reserve Board of Governors ("Board"), but also by the Board's integrity—both actual and perceived. Azoria's success hinges on the Board's ability to maintain market confidence through sound, impartial oversight—free from the taint of misconduct that could erode investor trust and disrupt financial flows. These interests are directly implicated by Appellant Trump's application for a stay, which seeks to prevent disruption to the financial system while this case is adjudicated.

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), counsel for *amici curiae* certifies that no counsel for a party authored this brief in whole or in part, and no person other than *amici curiae*, their members, or their counsel made a monetary contribution to the brief's preparation or submission.

The President's authority to remove a Federal Reserve Governor for cause, particularly when substantiated allegations involve mortgage fraud, serves to directly safeguard the integrity essential to Azoria's investments and the broader American economy.

As active market participants, Azoria and Mr. Fishback offer a unique perspective on how unchecked ethical lapses at the Board level could impact the regulated community, undermine forward guidance, and raise borrowing costs—far-reaching impacts that no party to this case adequately represents.

## SUMMARY OF ARGUMENT

On the evening of Monday, August 25, 2025, President Donald J. Trump exercised his lawful authority under Section 10 of the Federal Reserve Act to remove Governor Lisa Cook from her post—for cause— after documentary evidence surfaced showing that she had purportedly falsified mortgage documents to secure favorable loan terms. The evidence was so serious that the Director of the Federal Housing Finance Agency issued a criminal referral to the Department of Justice, which has since confirmed an active criminal investigation into Cook and, according to the Wall Street Journal's Brian Schwartz, has issued subpoenas as part of their inquiry into whether Cook submitted fraudulent information on her mortgage applications.[2] As *amici* detailed in a legal memorandum issued the preceding Friday,[3] substantiated

---

[2] Brian Schwartz, *et al.*, *DOJ Opens Criminal Investigation Into Fed's Cook, Issues Subpoenas*, Wall St. J. (Sept. 4, 2025, at 2:50 pm ET), https://www.wsj.com/politics/policy/lisa-cook-justice-department-probe-e7e801a6?mod=author_content_page_1_pos_1.

[3] *See* Steve Roberts, *et al.*, *Memorandum to James T. Fishback, CEO, Azoria Capital, Inc.: President Trump's Authority to Remove Governor Lisa D. Cook "For Cause" Under 12 U.S.C. § 242* (Lex Politica, PLLC, Aug. 22, 2025), https://investazoria.com/wp-content/uploads/2025/08/Azoria-Legal-Memo-Governor-Cook.pdf.

evidence of a Governor being investigated for potential felonies rises to the level of justifying 'for cause' removal under the Federal Reserve Act.

While much has been written about how no President has ever before removed a Federal Reserve Governor, that is not the true anomaly here. What is truly unprecedented is the fact that a sitting Governor of the Federal Reserve System—an institution entrusted with the stewardship of the American financial system—has been publicly referred for criminal prosecution *for financial crimes*.

The lawsuit below does not deny that this referral is real or public, nor does it directly deny any of the contemporaneous documentation supporting it. Instead, it asserts that even if the conduct occurred, it is irrelevant to Dr. Cook's statutory duties and thus cannot constitute "cause" for removal under 12 U.S.C. § 242. That contention not only misinterprets the text of the Federal Reserve Act and the authority granted to the President thereunder, it misunderstands the nature of central banking in modern practice. The integrity of the Federal Reserve is not an abstract or peripheral matter. Credibility is the currency through which monetary policy works, supervisory authority commands

4

compliance, and capital flows to U.S. markets. Integrity is not incidental to the job of a Federal Reserve Governor —it *is* the job.

When a Governor is referred for prosecution for fraud among the very kind that she is duty-bound to deter, the institution itself has become compromised. The Federal Reserve Act's plain text gives the President authority to remove such a Governor—and never has that authority been more necessary.

**ARGUMENT**

## I. A Governor Accused of Mortgage Fraud Cannot Credibly Supervise the Financial System and the President has Removal Authority to Preserve Institutional Integrity.

The Federal Reserve Act provides that members of the Board of Governors serve fourteen-year terms, "***unless sooner removed for cause by the President***."[4] This language makes clear that the President has independent authority under the Federal Reserve Act to remove members of the Board of Governors if "cause" exists for removal. The circumstances here merit such removal.

The Board of Governors is not a body of detached academics. It is the nation's top banking regulator. Its responsibilities include stress testing the largest financial institutions, setting capital requirements, and enforcing the Supplementary Leverage Ratio. The successful execution of these important responsibilities to keep our financial system credible and honest presupposes that the individuals carrying them out are themselves credible and honest.

---

[4] 12 U.S.C. § 242 (emphasis added).

6

In light of the criminal referral and active federal criminal investigation into Dr. Cook, *amici* believe that she can no longer be perceived as a credible or honest policymarker by the institutions she was entrusted to supervise.

In *amici*'s view, allowing Dr. Cook to remain on the Board despite a credible criminal referral to the Department of Justice would tell markets and supervised institutions that the Board holds itself to a lower standard than the banks it regulates. That double standard would erode confidence in supervisory enforcement, encourage skepticism of stress-test results, and weaken the effectiveness of regulatory oversight. The President's removal power exists precisely to prevent such an outcome. By removing Dr. Cook, he worked to preserve the institution's credibility; by withholding action until such time that a criminal conviction is ascertained, the damage would already be done.

Dr. Cook's response to the allegations so far has also been troubling. If she did not misrepresent her mortgage application, she could have readily filed a declaration under penalty of perjury pursuant to 18 U.S.C. § 1621 affirming as much with the district court. A truthful affidavit

7

would directly address the credible allegation that underlies President Trump's "for cause" removal of her. She has not done so.

Moreover, on page 15, footnote 6, of Appellee's brief filed with this court on Saturday afternoon, Dr. Cook cites public reporting from the Associated Press (AP)[5] about a purported "loan estimate" that Dr. Cook allegedly received in May 2021. Appellee cites this reporting as evidence that she is exonerated from the allegation of mortgage fraud by asserting that "the complete property records prove the opposite." That is (1) not an accurate reflection of what was stated in the AP report; and, (2) not an accurate reflection of what a loan estimate represents.

First, Appellee overstates the claims made in the article and mischaracterizes its meaning. The article states that Dr. Cook "referred to a condominium … as a 'vacation home' in a loan estimate," and that documents "also showed" she described the property as a "second home" on a security-clearance form. It does not claim to "prove" anything, and

---

[5] Lindsay Whitehurst & Christopher Rugaber, *Fed Governor Lisa Cook claimed 2nd residence as 'vacation home,' undercutting Trump fraud claims*, AP News (Sept. 12, 2025 at 7:07 pm CT), https://apnews.com/article/federal-reserve-lisa-cook-trump-852820c83e5001ec3b6e2d14047965c9.

it does not claim that these documents constituted "complete property records."

Second, a "loan estimate" does not constitute "complete property records." A loan estimate is a preliminary, non-binding offer provided by a bank to a prospective borrower, generated from information supplied by the borrower, and typically expiring within ten business days due to fluctuations in mortgage and interest rate markets. Critically, a loan estimate (1) contains no signature declaration by the borrower; (2) requires no sworn statement; and, (3) solicits no affirmation or attestation of truthfulness from the borrower. It is merely a provisional document created by the lender. As such, any loan estimate, by definition, cannot serve as exonerating evidence in a case concerning whether a borrower—including Dr. Cook—made a false statement on an executed mortgage application.

Appellee's September 13 filing in this Court (at 15) further states that Appellee was "deprived of a forum in which to offer any evidence," including any evidence of the purported "loan estimate." However, despite this Court being the second forum in two weeks in which Appellee has had the opportunity to do so, Appellee has *still* failed to:

1. File any and all exonerating information in this case;

2. File any related information, including especially the purported "loan estimate" that the AP reported on; or

3. File a sworn affidavit, under penalty of perjury, that she did not in fact falsely inform her bank that her second property was a primary residence.

Third, the loan estimate the AP reported on pertains to a different transaction—the mortgage for a second home that Dr. Cook purchased in June 2021. A Loan Estimate is a preliminary, unsworn disclosure; it is not a recorded instrument and does not establish what a borrower represented in an earlier application or closing file. At most, it reflects the lender's preliminary characterization for that later loan; it does not "cure" any misstatement in a prior transaction and is not probative of the first loan.

Fourth, *amici* are concerned about the provenance of the "loan estimate" and the manner in which it surfaced. A loan estimate is a private, pre-closing disclosure—not a recorded instrument—and it does not appear in the record; in the ordinary course, copies exist only with the borrower and the originating lender. If Appellee or her agents

10

selectively provided that document (or excerpts) to the press on the eve of briefing to advance a narrative of "exoneration," and now cite the resulting article as independent corroboration, that is self-sourced bootstrapping that warrants no weight. Unsworn, unauthenticated press accounts are not evidence, and a litigant may not manufacture "third-party" support by leaking materials and then citing the coverage. At minimum, the Court should disregard those references absent authentication of the document and a demonstration of its relevance to the transaction actually at issue.

## II. Forward Guidance—the Federal Reserve's Principal Monetary Tool—Depends Entirely on Credibility.

Forward guidance is the practice by which central bankers such as Federal Reserve Governors signal their expectations for the future path of policy rates. In modern monetary policy, this communication is not ancillary but central. Extensive empirical research has shown that forward guidance influences household and market expectations about the future path of interest rates.[6] Under the "expectations hypothesis,"

---

[6] Alisdair McKay, Emi Nakamura & Jón Steinsson, The Power of Forward Guidance Revisited, 106 AM. ECON. REV. 3133 (2016); Edward Nelson, *The Emergence of Forward Guidance as a Monetary Policy Tool*,

the yield on the two-year Treasury note equals the expected federal funds rate over that period.[7] In other words, the cost of borrowing for households and businesses is influenced not just by current policy, but by what market participants believe policymakers like Federal Reserve Governors will do in the future.

When a Governor speaks, markets listen. But they do so only if they believe her. If the speaker stands credibly accused of financial fraud, the speaker's words lose power. The transmission channel that connects public statements and policy speeches to market outcomes is severed. Without credibility, forward guidance ceases to function as a policy instrument.

This matters profoundly to Americans. Without forward guidance, interest rates can jump unpredictably and tighten financial conditions. Stability in financial conditions depends on credible voices. A Governor criminally referred to the DOJ over her own mortgages cannot provide

---

Fin. & Econ. Discussion Series, 2021-033 (Bd. of Governors of the Fed. Rsrv. Sys. 2021), https://doi.org/10.17016/FEDS.2021.033.

[7] Antonios Sangvinatsos, *The Expectations Hypothesis* (Univ. of S. Cal., Marshall Sch. of Bus., Working Paper, Mar. 29, 2008), https://pages.stern.nyu.edu/~sternfin/asangvin/ExpHyp.pdf.

that credibility. When her conduct is under federal investigation, her integrity is compromised—and so is the Fed's guidance. By removing Dr. Cook, President Trump is restoring credibility and integrity to the Federal Reserve, and in turn, its ability to set expectations about the future path of interest rates and maintain trust in America's financial system.

The President's removal authority under Section 242 ensures that the Board as an institution can continue to use its most important tool effectively.

### III. Plaintiff's Claims About Independence and Market Stability Invert the Real Risks.

Plaintiff argues that removing Dr. Cook threatens central bank independence and could destabilize markets. *See, e.g.*, Compl. (Doc. 1) ¶ 10, *Cook v. Trump*, No. 1:25-cv-02903-JMC (D.D.C., filed Aug. 28, 2025). The opposite is true. Independence was designed to insulate Governors from dismissal over policy disagreements. It was never intended to immunize officials from the consequences of the kind of malfeasance that Dr. Cook has been criminally referred to the DOJ over. Recent history underscores this point. The Federal Reserve tolerated Wells Fargo's pervasive and persistent misconduct for years before acting, and it

13

admitted that supervisors failed to take forceful enough action before the collapse of Silicon Valley Bank.[8]

These supervisory failures have already weakened the Board's credibility. To now permit a Governor credibly accused of mortgage fraud to remain in office would confirm the view that the Fed selectively enforces its standards—some banks, some of the time, and never on its own officials entrusted with the awesome responsibility of overseeing supervision and setting rates that influence every mortgage, credit card, and business loan in America. That perception would do far more to shake markets than a decisive and lawful act of removal.

---

[8] Board of Governors of the Federal Reserve System, *Review of the Federal Reserve's Supervision and Regulation of Silicon Valley Bank* (Apr. 28, 2023), https://www.federalreserve.gov/publications/files/svb-review-20230428.pdf.

14

## CONCLUSION

President Trump's removal of Dr. Cook "for cause" under 12 U.S.C. § 242 is statutorily authorized, grounded in substantiated allegations of serious misconduct that directly implicate her fitness for office. Far from eroding the Federal Reserve's independence or market stability, this action preserves the Board's credibility—a vital interest for investors like *amici*. Upholding the removal serves the public interest and aligns with the FRA's text and purpose.

Moreover, Dr. Cook is entitled to the presumption of innocence in any criminal trial. But that presumption protects her liberty, not her tenure in high office. No one has a constitutional right to remain a Governor of the Board, to draw a taxpayer salary, or to cast binding votes on the trajectory of interest rates while credibly accused of conduct that strikes at the core of the Board's statutory mission.

In the interests of safeguarding the integrity of the Board and maintaining stability in the financial markets, *amici* respectfully request that the Court grant Appellant's motion for a stay pending appeal and maintain the President's statutorily authorized removal of a compromised Federal Reserve Governor.

15

Date: September 15, 2025

_/s/ Anne Marie Mackin_
Anne Marie Mackin
LEX POLITICA PLLC
#129 7415 SW Parkway
Building 6, Suite 500
Austin, TX 78735
(512) 354-1785
amackin@lexpolitica.com

_Counsel of Record for Azoria
Capital, Inc. and James T.
Fishback_

16

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 29(a)(5) and 32(g)(1), I certify that the foregoing brief complies with the applicable requirements as follows:

1. This brief contains 2,500 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). It has been prepared in a proportionally spaced typeface using 14-point Century Schoolbook font in Microsoft Word.

Date: September 15, 2025                    */s/ Anne Marie Mackin*
                                             Anne Marie Mackin

17

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2025, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court of the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. Service will be accomplished by the CM/ECF system.

*/s/ Anne Marie Mackin*
Anne Marie Mackin