NOT YET SCHEDULED FOR ORAL ARGUMENT
No. 25-5326

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

LISA D. COOK,
*Plaintiff-Appellee,*

v.

DONALD J. TRUMP et al.,
*Defendants-Appellants.*

On Appeal from the United States District Court for the
District of Columbia, No. 1:25-cv-2903

## BRIEF OF *AMICI CURIAE* FLORIDA, 21 OTHER STATES, AND THE ARIZONA LEGISLATURE, IN SUPPORT OF APPELLANTS' EMERGENCY MOTION FOR STAY PENDING APPEAL AND ADMINISTRATIVE STAY

JAMES UTHMEIER
  *Attorney General of Florida*

JEFFREY PAUL DESOUSA
  *Acting Solicitor General*
  *Counsel of Record*
NATHAN A. FORRESTER
JASON J. MUEHLHOFF
  *Chief Deputy Solicitors General*
CALEB A. STEPHENS
  *Assistant Solicitor General*

Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
*jeffrey.desousa@*
  *myfloridalegal.com*

September 15, 2025

*Counsel for* Amici Curiae

## CERTIFICATE AS TO PARTIES, FILINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), undersigned counsel certifies the following:

**Parties, Intervenors, and Amici**

All parties, intervenors, and amici appearing before the district court and in this Court are listed in Appellants' stay motion, except for each of the amici submitting this brief.

**Rulings Under Review**

References to the rulings at issue appear in Appellants' stay application.

**Related Cases**

Lisa D. Cook v. Donald J. Trump et al., 1:25-cv-02903-JMC (D.D.C.).

**TABLE OF CONTENTS**

CERTIFICATE AS TO PARTIES, FILINGS, AND RELATED CASES ...................................................................... i

TABLE OF AUTHORITIES ...................................................................... iii

INTEREST OF *AMICI CURIAE* ...................................................................... 1

ARGUMENT ...................................................................... 1

I.    Federal courts may not enjoin federal officers to treat a removed officer as if she still holds office. ...................................................................... 2

II.   Cook did not invoke the exclusive avenue for challenging a federal officer's removal: a writ of quo warranto ...................................................................... 9

CONCLUSION ...................................................................... 13

ADDITIONAL SIGNATORIES ...................................................................... 14

CERTIFICATE OF COMPLIANCE ...................................................................... 15

CERTIFICATE OF SERVICE ...................................................................... 16

# TABLE OF AUTHORITIES

## Cases

*Andrade v. Lauer*, 729 F.2d 1475 (D.C. Cir. 1984) ..................... 2, 8, 9, 10

*Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320 (2015)...................... 9

*Attorney General v. Earl of Clarendon,* 34 Eng. Rep. 190 (Ch. 1810)............................................................................................. 3

*Beebe v. Robinson*, 52 Ala. 66 (1875).......................................................... 5

*Berry v. Reagan*, No. 83-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983)............................................................................................. 6

*Bessent v. Dellinger*, 145 S. Ct. 515 (2025) .......................................... 2, 6

*Bittner v. United States*, 143 S. Ct. 713 (2023)..................................... 12

*Case v. Beauregard*, 101 U.S. 688 (1880)................................................. 2

*Cochran v. McCleary*, 22 Iowa 75 (1867) ................................................. 5

*Delahanty v. Warner*, 75 Ill. 185, 186 (1874) ......................................... 5

*Delgado v. Chavez*, 140 U.S. 586 (1891) ................................................. 9

*Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012)......................................... 11

*Georgia v. Stanton*, 73 U.S. (6 Wall.) 50 (1867)...................................... 3

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308 (1999) ............................................................... 3, 6

*Hagner v. Heyberger*, 7 Watts & Serg. 104 (Penn. 1844) .................... 4, 5

*In re Sawyer*, 124 U.S. 200 (1888)................................................ 3, 4, 5, 6

*In re Thornburgh*, 869 F.2d 1503 (D.C. Cir. 1989) ................................. 7

*Johnson v. Horton*, 63 F.2d 950 (9th Cir. 1933) ...................................... 2

*Newman v. United States ex rel. Frizzell*, 238 U.S. 537 (1915) ............. 10

*Nw. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO*, 451 U.S. 77 (1981) .......................................................................... 9

*Pelicone v. Hodges*, 320 F.2d 754 (D.C. Cir. 1963) ................................... 8

*PHH Corp. v. Consumer Fin. Prot. Bureau*, 881 F.3d 75 (D.C. Cir. 2018) ................................................................................................. 8

*Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197 (2020) ............................................................................................................ 8

*Severino v. Biden*, 71 F.4th 1038 (D.C. Cir. 2023) ............................ 2, 7, 8

*Sheridan v. Colvin*, 78 Ill. 237 (1875) ....................................................... 5

*Stapf v. United States*, 367 F.2d 326 (D.C. Cir. 1966) ............................. 8

*State ex rel. McCaffery v. Aloe*, 54 S.W. 494, 496 (Mo. 1899) ................. 5

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ..................... 7

*Swan v. Clinton*, 100 F.3d 973 (1996) ........................................................ 7

*Tappan v. Gray*, 9 Paige Ch. 506 (Ch. Ct. N.Y. 1842) .............................. 4

*Taylor v. Kercheval*, 82 F. 497 (C.C.D. Ind. 1897) ................................... 5

*Transam. Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979) ................ 11

*United States v. Old Dominion Boat Club*, 630 F.3d 1039 (D.C. Cir. 2011) .............................................................................................. 9

*Vitarelli v. Seaton*, 359 U.S. 535 (1959) .................................................... 6

*Walton v. House of Representatives of Okla.*, 265 U.S. 487 (1924) ............................................................................................................ 3

*Webster v. Fall*, 266 U.S. 507 (1925) ........................................................8

*White v. Berry*, 171 U.S. 366, 377 (1898) ..................................................5

**Statutes**

42 U.S.C. § 2000e-5 ...................................................................................1

D.C. Code § 16-3501 ...............................................................................2, 10

D.C. Code § 16-3502 ...............................................................................10

D.C. Code § 16-3503 ...........................................................................10, 11

D.C. Code § 16-3541 ...............................................................................10

D.C. Code § 16-3542 ...............................................................................10

D.C. Code § 16-3544 ...............................................................................10

D.C. Code § 16-3545 ...............................................................................11

D.C. Code § 16-3546 ...............................................................................12

D.C. Code § 16-3547 ...............................................................................12

D.C. Code § 16-3548 ...............................................................................11

Pub. L. No. 88-241, § 1, 77 Stat. 602 (1963) ..........................................10

**Rules**

D.C. Circuit Rule 29 .................................................................................1

**Other Authorities**

Eugene McQuillin, *A Treatise on the Law of Municipal
  Corporations* (1911) .............................................................................6

Howard Clifford Joyce, *A Treatise on the Law Relating to
  Injunctions* (1909) ...............................................................................6

James L. High, *Extraordinary Legal Remedies* (1896)..........................10

James L. High, *Treatise on the Law of Injunctions* (2d ed. 1880)...............................................................................6

John Norton Pomeroy, *A Treatise on Equity Jurisprudence* (4th ed. 1918) ....................................................................6

Joseph Story, *Commentaries on Equity Pleadings and the Incidents Thereof* (2d ed. 1840)..............................................3

Letter from John Adams to the Inhabitants of the Colony of Massachusetts-Bay, Apr. 1775 .........................................4

Nikolas Bowie, *Why the Constitution Was Written Down*, 71 Stan. L. Rev. 1397 (2018).....................................................4

Seth Davis, *Empire in Equity*, 97 Notre Dame L. Rev. 1985 (2022)....................................................................................4

W.S. Holdsworth, *English Corporation Law in the 16th and 17th Centuries*, 31 Yale L.J. 382 (1922) ..............................4

# INTEREST OF *AMICI CURIAE*

Pursuant to D.C. Circuit Rule 29, the Attorney General of Florida—on behalf of Florida, Alabama, Alaska, Arkansas, Georgia, Idaho, Indiana, Iowa, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nebraska, North Dakota, Oklahoma, South Carolina, South Dakota, Tennessee, Texas, West Virginia, and the Arizona Legislature—submits this brief as *amici curiae* in support of Appellants' motion for a stay. *Amici* have an interest in ensuring that federal principal officers are removable by the President and thus accountable to the people.

# ARGUMENT

As the Government explains, the district court erred on the merits. *See* Emerg. Mot. for Stay, No. 25-5326, at 8–20. But in granting a preliminary injunction, the court also erred on the remedy. It purported to reinstate Appellee Lisa Cook "*de facto*" to membership on the Federal Reserve Board. DE27 at 48. The court lacked this authority. Federal courts cannot use their equitable powers to remedy unlawful removals absent an act of Congress. *See, e.g.*, 42 U.S.C. § 2000e-5(g) (authorizing courts to "reinstate[]" employees who suffer discrimination). No statute authorizes injunctive relief here. To the contrary, Congress has channeled right-to-

office claims into the quo warranto process, D.C. Code § 16-3501 *et seq.*, which affords "the exclusive remedy" for "direct[ly] attack[ing]" one's removal, *Andrade v. Lauer*, 729 F.2d 1475, 1497 (D.C. Cir. 1984).[1] Cook ignored this remedy. A stay is therefore warranted.

## I.     Federal courts may not enjoin federal officers to treat a removed officer as if she still holds office.

Courts sitting in equity have never been empowered to reinstate public officials. The district court correctly acknowledged it could not "directly 'enjoin the President in the performance of his official duties' to require him to reappoint Cook." DE27 at 48 (quoting *Severino v. Biden*, 71 F.4th 1038, 1042 (D.C. Cir. 2023). But it thought it could sidestep this constraint by "enter[ing] an injunction directing [Chairman] Powell and the Board of Governors to allow Cook to continue to operate as a member of the Board for the pendency of this litigation." DE27 at 48. It is unclear

---

[1] *See also Bessent v. Dellinger*, 145 S. Ct. 515, 517 (2025) (Gorsuch, J., dissenting, joined by Alito, J.) (quoting *Case v. Beauregard*, 101 U.S. 688, 690 (1880)) (because a "court of equity will not entertain a case for relief where the complainant has an adequate legal remedy," quo warranto undercuts any "novel equitable power to return an agency head to his office"); *Johnson v. Horton*, 63 F.2d 950, 953 (9th Cir. 1933) (agreeing with appellees that "the question of the title to the office cannot be tried by a proceeding in equity, but that the exclusive remedy is by a writ of quo warranto" (quotation omitted)).

how this "*de facto*" reinstatement is any less an encroachment on the separation of powers than formal reinstatement. In any event, the district court was wrong. Federal courts may issue only equitable remedies "traditionally accorded by courts of equity." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999). And history teaches that "[a] court of equity has no jurisdiction over the appointment and removal of public officers." *Walton v. House of Representatives of Okla.*, 265 U.S. 487, 490 (1924); *In re Sawyer*, 124 U.S. 200, 212 (1888)).

This principle traces back to English common law. Recognizing the critical "distinction between judicial and political power," English courts would not wield equity to vindicate a litigant's "political right[]" to office. *Georgia v. Stanton*, 73 U.S. (6 Wall.) 50, 71, 76 & n.20 (1867) (collecting cases); *see Sawyer*, 124 U.S. at 212 (collecting cases). In *Attorney General v. Earl of Clarendon*, for instance, the English Court of Chancery declined to remove public-school officers for lack of necessary legal qualifications, holding that a court of equity "has no jurisdiction with regard either to the election or the [removal] of" officers. 34 Eng. Rep. 190, 193 (Ch. 1810). Contemporary English cases agreed. *See* Joseph Story, *Commentaries on Equity Pleadings and the Incidents Thereof* §§ 467–70 (2d ed. 1840)

(explaining that equity courts would not adjudicate rights of a "political nature"); Seth Davis, *Empire in Equity*, 97 Notre Dame L. Rev. 1985, 2011–12 (2022).[2]

American courts followed this tradition. In the early 19th century, courts denied equitable relief to removed officials, even when the official's ouster was illegal. *Tappan v. Gray*, 9 Paige Ch. 506, 508–09 (Ch. Ct. N.Y. 1842); *see also Hagner*, 7 Watts & Serg. at 105 ; *Sawyer*, 124 U.S. at 212 (collecting cases). *Hagner* is emblematic. There, the Supreme Court of Pennsylvania declined to enjoin a defendant from unlawfully acting as a

---

[2] Although *Earl of Clarendon* and some cases cited in *Sawyer* involved corporate officers, those legal entities were treated more like governments and public entities. Colonial governments, for instance, were created through corporate charters, with "shareholders" acting like modern-day voters and voting for corporate boards that looked like modern-day state and local governments. Nikolas Bowie, *Why the Constitution Was Written Down*, 71 Stan. L. Rev. 1397, 1416–21 (2018); *see also* Letter from John Adams to the Inhabitants of the Colony of Massachusetts-Bay, Apr. 1775, https://founders.archives.gov/documents/Adams/06-02-02-0072-0015. As noted in *Hagner v. Heyberger*, limits on equitable jurisdiction that applied to "private corporations" apply "*à fortiori*" to "public officer[s] of a municipal character." 7 Watts & Serg. 104, 105, *see also* W.S. Holdsworth, *English Corporation Law in the 16th and 17th Centuries*, 31 Yale L.J. 382, 383–84 (1922) (For both public and private corporations, "creation by and subordination to the state are the only terms upon which the existence of large associations of men can be safely allowed to lead an active life.").

school director because it possessed no more power than "an English court of chancery." 7 Watts & Serg. at 106–07. Because chancery courts traditionally "would not sustain the injunction proceeding to try the election or [removal] of corporators of any description," Pennsylvania's high court held it could not either. *Id.* Other courts took a similar tack during Reconstruction.[3]

The Supreme Court confirmed this equitable constraint in *Sawyer*. There a local officer had obtained an injunction barring other local officials from removing him. 124 U.S. at 204–06. After the other officials were held in contempt, the Court issued a writ of habeas corpus vacating their convictions, explaining that a federal equity court "has no jurisdiction . . . over the appointment and removal of public officials." *Id.* at 210.[4]

---

[3] *See, e.g.*, *Cochran v. McCleary*, 22 Iowa 75, 91 (1867) ("The right to a public office or franchise cannot, as the authorities above cited show, be determined in equity."); *Delahanty v. Warner*, 75 Ill. 185, 186 (1874) (similar); *Sheridan v. Colvin*, 78 Ill. 237, 247 (1875) (similar); *Beebe v. Robinson*, 52 Ala. 66, 73 (1875) (similar); *Taylor v. Kercheval*, 82 F. 497, 499 (C.C.D. Ind. 1897) (similar); *State ex rel. McCaffery v. Aloe*, 54 S.W. 494, 496 (Mo. 1899) (similar).

[4] *See also White v. Berry*, 171 U.S. 366, 377 (1898); *Walton*, 265 U.S. at 490; *Baker v. Carr*, 369 U.S. 186, 231 (1962).

A wall of contemporary treatises echoed that understanding.[5] As one 19th-century commentator put it, "[n]o principle of the law of injunctions" "is more definitely fixed or more clearly established than that courts of equity will not interfere by injunction to determine questions concerning the appointment of public officers or their title to office." 2 High, *Law of Injunctions* § 1312.

In short, injunctions reinstating removed officials were "unknown to traditional equity practice." *Grupo Mexicano*, 527 U.S. at 327; *see also Dellinger*, 145 S. Ct. at 517 (Gorsuch, J., dissenting) ("'No English case' involved 'a bill for an injunction to restrain the appointment or removal of a municipal officer.'" (quoting *Sawyer*, 124 U.S. at 212)). We know of only two more recent cases—*Berry v. Reagan*, No. 83-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983), *vacated as moot*, 732 F.2d 949 (D.C. Cir. 1983); and *Vitarelli v. Seaton*, 359 U.S. 535 (1959)—in which a federal court has purported to reinstate a removed officer. Neither grappled in any way

---

[5] *See* 2 James L. High, *Treatise on the Law of Injunctions* § 1312 (2d ed. 1880); 1 Howard Clifford Joyce, *A Treatise on the Law Relating to Injunctions* § 55 (1909); 4 John Norton Pomeroy, *A Treatise on Equity Jurisprudence* § 1760 (4th ed. 1918); 2 Eugene McQuillin, *A Treatise on the Law of Municipal Corporations* § 582 n.98 (1911).

with limits on federal remedial power. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998) ("[D]rive-by" rulings have "no precedential effect.").

The district court relied on this Court's rulings in *Severino* and *Swan* for the proposition that a court may "enjoin 'subordinate executive officials' to reinstate a wrongly terminated official 'de facto,' even without a formal presidential reappointment." DE27 at 48 (quoting *Severino v. Biden*, 71 F.4th 1038 (quoting *Swan v. Clinton*, 100 F.3d 973, 980 (1996)). But it took those quotations out of context. *Severino* and *Swan* addressed only whether the removed plaintiffs' asserted injuries were likely to be redressed by a favorable judicial decision *for purposes of standing*. They did not resolve whether the courts actually had that remedial power because "the redressability prong of the standing test is not an inquiry into the scope of the court's power to grant relief." *In re Thornburgh*, 869 F.2d 1503, 1511 (D.C. Cir. 1989). Rather, the standing inquiry "assumes that a decision on the merits would be favorable and that the requested relief would be granted" and asks only "whether that relief would be likely to redress the party's injury." *Id.* Thus, a determination that some plaintiffs "sufficiently allege[d]" the availability of "*de facto*" reinstatement for

standing purposes, *Severino*, 71 F.4th at 1043, has no bearing on whether a court can in fact provide such relief.

Neither the panels nor the parties in *Severino* and *Swan* mentioned the *Sawyer* line of decisions, and "it is black-letter law that cases are not precedent for issues that were not raised or decided." *PHH Corp. v. Consumer Fin. Prot. Bureau*, 881 F.3d 75, 195 (D.C. Cir. 2018) (Kavanaugh, J., dissenting), *abrogated by Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197 (2020). Whether *Sawyer* bars the injunctions theorized in those cases "merely lurk[ed] in the record," *Webster v. Fall*, 266 U.S. 507, 511 (1925), so neither case "constitute[s] precedent[]" on the issue, *Stapf v. United States*, 367 F.2d 326, 330 (D.C. Cir. 1966). So too with *Pelicone v. Hodges*, 320 F.2d 754 (D.C. Cir. 1963), which did not address *Sawyer* or the propriety of injunctive relief.

Any other reading of *Swan* and *Severino* would impermissibly conflict with this Court's prior declaration that "the exclusive remedy" for a "'direct' attack" on removal "is a *quo warranto* action." *Andrade*, 729 F.2d at 1497. Though *Andrade* carved out a narrow exception through which a court may "indirect[ly]" remedy a removal by "restrain[ing] invalidly appointed officers" from performing their duties, *id.* at 1496–98, it left

intact the general principle that direct efforts to confirm entitlement to office must travel through quo warranto, *id.* at 1497–99. That principle undercuts the injunctions proposed in *Swan* and *Severino*. And because *Andrade* predates both cases, it controls. *United States v. Old Dominion Boat Club*, 630 F.3d 1039, 1045 (D.C. Cir. 2011).

## II. Cook did not invoke the exclusive avenue for challenging a federal officer's removal: a writ of quo warranto.

That courts sitting in equity lack authority to restore removed federal officers to office is confirmed by Congress's decision to channel right-to-office claims into the D.C. Code's quo warranto process. To express an "intent to foreclose equitable relief," *Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320, 328 (2015) (quotations omitted), Congress typically codifies a "comprehensive" enforcement and "remedial scheme," *Nw. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO*, 451 U.S. 77, 93–94 (1981). Here Congress has done just that.

Historically, the writ of quo warranto was the exclusive process for clearing one's title to office. *Delgado v. Chavez*, 140 U.S. 586, 590 (1891) ("[Q]uo warranto is a plain, speedy, and adequate, as well as the recognized, remedy for trying the title to office[.]"). That writ was used by "the king, against one who usurped or claimed any office, franchise or liberty

of the crown, to inquire" into whether that individual had the right to exercise that office, franchise, or liberty. James L. High, *Extraordinary Legal Remedies* §§ 591–92 (1896) (quo warranto literally means "by what right"). The king's attorney general "prosecuted" the suit, *id.* § 603, though eventually private individuals were able to use the writ to litigate their own disputes over title to office and "quiet the possession" of that office, *id.* § 602.

Congress built upon that common law in erecting the modern quo-warranto framework. *See* Pub. L. No. 88-241, § 1, 77 Stat. 602 (1963); *Newman v. United States ex rel. Frizzell*, 238 U.S. 537, 544, 550–51 (1915); *Andrade*, 729 F.2d at 1497–98. Quo warranto is available to challenge any person who "usurps, intrudes into, or unlawfully holds or exercises" a federal office. D.C. Code § 16-3501. It is enforced by a "civil action" against the intruder, *id.*, with specific rules about pleading, *id.* §§ 16-3541, 3544, and "notice" to the alleged intruder, *id.* § 16-3542. The suit must be brought in "the United States District Court for the District of Columbia," *id.* § 16-3501, by the Attorney General or a United States attorney, *id.* §§ 16-3502, 3503. But "[i]f the Attorney General or United

States attorney refuses" to sue, an "interested person may apply to the court" to proceed anyway. *Id.* § 16-3503.

"Given the painstaking detail with which the [D.C. Code] sets out the method" for challenging a removal, it must be presumed that "Congress intended" the Code to be the "exclusive" process for testing one's title to office. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 11–13 (2012). Yet Cook did not so much as mention "quo warranto" in her complaint, DE1, let alone invoke the D.C. Code's quo warranto process or allege that she had already complied with its requirements.

Whatever the case may be, the Code does not permit the reinstatement Cook seeks. It authorizes just three remedies: (1) legal "oust[er]" of the "intrude[r]," (2) physical "exclu[sion]" of the intruder from the office, or (3) "damages" for the removed official. D.C. Code §§ 16-3545, 3548. Nowhere does it authorize reinstatement, whether through an injunction or a writ of mandamus. *See Transam. Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979) (when a statute "expressly provides a particular remedy or remedies," courts "must be chary of reading others into it"). That silence is deafening here, seeing that Congress *did* authorize reinstatement in the Code for quo warranto proceedings involving D.C.-based

corporations. *See* D.C. Code §§ 16-3547 ("[T]he court may render judgment . . . that the relator, if entitled to be declared elected, be admitted to the office."), 3546 (authorizing the court to "perpetually restrain[] and enjoin[] [defendants] from the commission or continuance of the acts complained of"). "When Congress includes particular language in one section of a statute but omits it from a neighbor, we normally understand that difference in language to convey a difference in meaning." *Bittner v. United States*, 143 S. Ct. 713, 720 (2023).

## CONCLUSION

The stay should be granted.

September 15, 2025

Respectfully submitted,

JAMES UTHMEIER
  *Attorney General of Florida*

 */s/ Jeffrey Paul DeSousa*
JEFFREY PAUL DESOUSA
  *Acting Solicitor General*
NATHAN A. FORRESTER
JASON J. MUEHLHOFF
  *Chief Deputy Solicitors General*
CALEB A. STEPHENS
  *Assistant Solicitor General*
State of Florida
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
*jeffrey.desousa@myfloridalegal.com*

*Counsel for* Amici Curiae

# ADDITIONAL SIGNATORIES

STEVE MARSHALL
Attorney General of Alabama

STEPHEN J. COX
Attorney General of Alaska

STEVE MONTENEGRO
Speaker of the Arizona
House of Representatives

WARREN PETERSON
President of the Arizona Senate

TIM GRIFFIN
Attorney General of Arkansas

CHRISTOPHER M. CARR
Attorney General of Georgia

RAÚL R. LABRADOR
Attorney General of Idaho

THEODORE E. ROKITA
Attorney General of Indiana

BRENNA BIRD
Attorney General of Iowa

KRIS KOBACH
Attorney General of Kansas

RUSSELL COLEMAN
Attorney General of Kentucky

LIZ MURRILL
Attorney General of Louisiana

LYNN FITCH
Attorney General of Mississippi

ANDREW BAILEY
Attorney General of Missouri

AUSTIN KNUDSEN
Attorney General of Montana

MICHAEL T. HILGERS
Attorney General of Nebraska

DREW H. WRIGLEY
Attorney General of North Dakota

GENTNER DRUMMOND
Attorney General of Oklahoma

ALAN WILSON
Attorney General of South Carolina

MARTY JACKLEY
Attorney General of South Dakota

JONATHAN SKRMETTI
Attorney General of Tennessee

KEN PAXTON
Attorney General of Texas

JOHN MCCUSKEY
Attorney General of West Virginia

## CERTIFICATE OF COMPLIANCE

This amicus brief complies with the type-volume limit of Federal Rule of Appellate Procedure 29(a)(5) because it contains 2,471 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Word for Microsoft 365 in 14-point Century Schoolbook, a proportionally spaced typeface.

*/s/ Jeffrey Paul DeSousa*
Jeffrey Paul DeSousa
Acting Solicitor General

## CERTIFICATE OF SERVICE

I certify that on September 15, 2025, I caused this document to be electronically filed with the Clerk of Court using this Court's CM/ECF system, which will send a notice of docketing activity to all parties who are registered through CM/ECF.

<u>  /s/ Jeffrey Paul DeSousa  </u>
Jeffrey Paul DeSousa
Acting Solicitor General
