# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**No. 25-5326**             **September Term, 2025**

**1:25-cv-02903-JMC**

**Filed On:** September 15, 2025

Lisa D. Cook, in her official capacity as a
member of the Board of Governors of the
Federal Reserve System and her personal
capacity,

         Appellee

     v.

Donald J. Trump, in his official capacity as
President of the United States, et al.,

         Appellants

**BEFORE:**     Katsas*, Childs, and Garcia, Circuit Judges

## O R D E R

Upon consideration of the emergency motion for stay pending appeal and administrative stay, the oppositions thereto, and the reply; the motion for leave to participate as amicus curiae filed by the Separation of Powers Clinic and the lodged amicus brief; and the motion to participate as amicus curiae filed by Azoria Capital, Inc. and James T. Fishback and the lodged amicus brief, it is

**ORDERED** that the motions for leave to participate as amicus curiae be granted. The Clerk is directed to file the lodged amicus briefs. It is

**FURTHER ORDERED** that the motion for stay and administrative stay be denied. Appellants have not satisfied the stringent requirements for a stay pending appeal. See Nken v. Holder, 556 U.S. 418, 434 (2009); D.C. Circuit Handbook of Practice and Internal Procedures 33 (2025). A concurring statement of Circuit Judge Garcia, joined by Circuit Judge Childs, and a dissenting statement of Circuit Judge Katsas are attached.

### Per Curiam

                        **FOR THE COURT:**
                        Clifton B. Cislak, Clerk

          BY:      /s/
                        Daniel J. Reidy
                        Deputy Clerk

* Circuit Judge Katsas would grant the motion for stay pending appeal.

GARCIA, *Circuit Judge*, joined by CHILDS, *Circuit Judge*, concurring:

On August 25, 2025, President Trump found "cause" to remove Lisa D. Cook from her position as a member of the Board of Governors of the Federal Reserve System. In this court, the government does not dispute that it failed to provide Cook even minimal process—that is, notice of the allegation against her and a meaningful opportunity to respond—before she was purportedly removed. The district court thus preliminarily enjoined Cook's removal based, in part, on its conclusion that her removal likely violated the Fifth Amendment's Due Process Clause. That conclusion is correct. For that reason—and because of the myriad unique features of this case as compared to other recent challenges to presidential removals—I vote to deny the government's emergency request for a stay pending appeal.

The district court issued its preliminary injunction after finding that Cook is likely to succeed on two of her claims: her substantive, statutory claim that she was removed without "cause" in violation of the Federal Reserve Act, *Cook v. Trump*, 2025 WL 2607761, at *4–12 (D.D.C. Sept. 9, 2025), and her procedural claim that she did not receive sufficient process prior to her removal in violation of the Due Process Clause of the Fifth Amendment, *id.* at *13–17. As the government does not dispute, Cook's due process claim is reviewable. *See Ralls Corp. v. Comm. on Foreign Inv. in the U.S.*, 758 F.3d 296, 314 (D.C. Cir. 2014). I agree with the district court's conclusion that Cook's due process claim is likely to succeed.

The Supreme Court and this court have repeatedly held that a public official with "for cause" protection from removal has a constitutionally protected property interest in her position. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39 (1985); *Esparraguera v. Dep't of the Army*, 101 F.4th 28, 33 (D.C. Cir. 2024) (collecting cases). Under those

precedents, Cook has such a property interest because the Federal Reserve Act provides that she may be removed only "for cause." 12 U.S.C. § 242. She therefore may not be removed prior to being provided "some kind" of meaningful notice and opportunity to respond. *Loudermill*, 470 U.S. at 542 (cleaned up); *see Esparraguera*, 101 F.4th at 40.

The government contends that *Loudermill* and its progeny do not apply because they concern mere government employees, and that principal officers of the United States like Cook can never have property interests in their positions. Mot. for Stay 18–19. The distinction between employees and principal officers is undoubtedly significant in certain respects. But the government's categorical position is inconsistent with the principles underlying due process analysis, and no case supports it.

Consider first the longstanding focus of the due process analysis in this context. Courts ask whether the legislature has created "a legitimate claim of entitlement" to continued employment. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). The reason a statute providing "for cause" protection from removal creates a property interest is that it supports an "objective basis for believing" that the employee will "remain employed *unless* they do something warranting their termination." *Hall v. Ford*, 856 F.2d 255, 265 (D.C. Cir. 1988). Here, the plain purpose of providing for-cause protection was to assure members of the Board of Governors— and national and global markets—that they do not serve at will and thus enjoy a measure of policy independence from the President. *See, e.g.*, *PHH Corp. v. CFPB*, 881 F.3d 75, 78 (D.C. Cir. 2018) (en banc), *abrogated on other grounds by*, *Seila Law LLC v. CFPB*, 591 U.S. 197 (2020) (explaining that the Federal Reserve's "independence" enables it "to pursue the general public interest in the nation's longer-term economic

stability and success"). Those statutorily based expectations give rise to a protected property interest.

The government offers no reason why an official would have a lesser expectation of continued employment based on a for-cause removal protection because she is an appointed officer—even a principal officer—rather than an employee. Instead, the government draws on intuitions about the nature of principal officers in general. And it is true: The Supreme Court has held that nearly all such officers are removable at will, *see Seila Law*, 591 U.S. at 215–18, so it usually makes sense to think that such officers have no legitimate expectation of retaining their positions. But in this singular case the government has pointedly *not* argued that the President has unfettered removal authority over members of the Federal Reserve System's Board of Governors. To the contrary, the government concedes that Cook is protected, by statute, from removal except for cause. In due process parlance, that protection—if it does anything at all—provides a "legitimate" and "objective basis for believing" that Cook does not serve at will.

With the principles underlying modern due process precedent stacked against it, the government turns to broad language in inapposite cases. The government relies primarily on *Taylor v. Beckham*, 178 U.S. 548 (1900). In that case, the Kentucky general assembly resolved, per the Kentucky Constitution, a contested gubernatorial election. The losing candidates—who had been temporarily installed in office after the election—argued that the legislature's action deprived them "of their property without due process of law." *Id.* at 557. The Court rejected the notion that the candidates had any property interest in their positions. The government now seizes on the Court's statement that "public office is not property," *id.* at 576, to argue that no appointment to a federal office, however structured, could give rise to a protected property interest.

The government overreads *Taylor*. Crucially, the case involved nothing akin to a statutory for-cause removal protection: The only argument for a property interest was that the offices in question were "both profitable and honorable." *Id.* at 557. *Taylor* necessarily did not address the question we face here. Further, much of the Court's rationale turned on the fact that the parties were seeking constitutionally established "elective office" and that the election had been resolved in exactly the way the state constitution envisioned. *Id.* at 575; *see also id.* (explaining that elected positions "created by the state Constitution" are "held solely in accordance with the terms of that instrument"). The government has not offered a sound basis to extend *Taylor*'s holding to a federal appointed office Congress created and endowed with for-cause removal protection.

The government's other two cases are also inapposite. *Crenshaw v. United States*, 134 U.S. 99 (1890), involved a Navy cadet who, at the time of entering the Naval Academy, was statutorily entitled to serve without removal (except for certain causes) following successful certification. *Id.* at 104. But before the cadet completed his training, Congress passed a statute permitting his early removal. The Court held that the cadet had no "vested interest . . . in his office of which congress could not deprive him." *Id. Crenshaw* therefore simply holds that statutory removal restrictions create no vested right against Congress's power to amend the statute.

*Butler v. Pennsylvania*, 51 U.S. 402 (1850), is similar. The question there was whether any "vested, private personal rights," *id.* at 417, were violated when the state legislature passed "a subsequent statute" reducing the salaries of certain appointed officers, *id.* at 414. The Court answered in the negative, finding "no limit upon the discretion of the legislature" to make such alterations. *Id.* at 417; *see also id.*

(noting that terms of office and salaries "are dependent upon legislative discretion").

*Crenshaw* and *Butler* thus support the uncontroversial—and inapplicable—proposition that Congress could amend the Federal Reserve Act to remove Cook's for-cause protection without running afoul of the Due Process Clause. *See Glidden Co. v. Zdanok*, 370 U.S. 530, 534 (1962) (characterizing both *Crenshaw* and *Butler* as holding only that "neither the tenure nor salary of federal officers is constitutionally protected from *impairment by Congress*" (emphasis added)).

The consequences of concluding that officers with for-cause removal protection may invoke due process protections are limited, for the simple reason noted above: Most principal officers are removable at will. *See Seila Law*, 591 U.S. at 215. If Cook were too, she would plainly have no interest protected by the Due Process Clause. But Cook enjoys uncontested for-cause protection, so she does have such an interest.

One judge of this court previously concluded that the Supreme Court's due process precedents suggest that an officer with removal protections "would be constitutionally entitled to some procedural protections before removal." *PHH Corp.*, 881 F.3d 75 at 135 n.15 (Griffith, J., concurring in the judgment). Further, requiring some sort of opportunity to respond would not be anomalous in this context: The Supreme Court has twice stated (though evidently as a matter of statutory interpretation rather than constitutional dictate) that if Congress specifies that an officer of the United States may be removed only for certain causes, "the officer is entitled to notice and a hearing." *Shurtleff v. United States*, 189 U.S. 311, 314 (1903); *see also Reagan v. United States*, 182 U.S. 419, 425 (1901) ("[W]here causes of removal are specified by Constitution or statute, . . . notice and hearing are essential. If there were not,

the appointing power could remove at pleasure or for such cause as it deemed sufficient.").

Given that Cook has a property interest in her position, she is entitled to "some kind" of process before removal. *Loudermill*, 470 U.S. at 542 (cleaned up). Before this court, the government does not dispute that it provided Cook no meaningful notice or opportunity to respond to the allegations against her. *See Cook*, 2025 WL 2607761, at *13–17. The government argues only that Cook "does not explain what difference a hearing would have made." Mot. for Stay 19. Even accepting that premise, Cook's entitlement to process stands apart from whether she would succeed in securing a different outcome. *See Loudermill*, 470 U.S. at 544 ("[T]he right to a hearing does not depend on a demonstration of certain success.").

Because Cook's due process claim is very likely meritorious, there is no need to address the meaning of "for cause" in the Federal Reserve Act in this emergency posture.

As for the equitable factors, the government relies primarily on the Supreme Court's orders in *Trump v. Wilcox*, 145 S. Ct. 1415 (2025), and *Trump v. Boyle*, 145 S. Ct. 2653 (2025). In those cases, the Supreme Court stayed injunctions prohibiting the removal of members of the National Labor Relations Board, Merit Systems Protection Board, and Consumer Product Safety Commission. The Court suggested that the distinct merits question in those cases—whether for-cause removal protections for the officers at issue are constitutional—was close. *Wilcox*, 145 S. Ct. at 1415. And in that context, the Court stated that "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Id.*

This case differs in material respects. First, neither *Wilcox*, *Boyle*, nor any similar case involved a constitutional due process claim like Cook's, on which Cook is likely to succeed. That difference alters the equitable calculus. Cook's constitutional claim suggests only that the President cannot remove her without providing a constitutionally adequate opportunity to respond. The harm to the government in this case is better viewed as the inability to remove a for-cause-protected official without following the Due Process Clause's basic dictates. Yet in balancing the equities, we have held—in terms that squarely apply here—that the government may not "prioritize any policy goal over the Due Process Clause." *Karem v. Trump*, 960 F.3d 656, 668 (D.C. Cir. 2020) (quoting *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013)). Granting the government's request for relief when Cook has received no meaningful process would contravene that principle.

Second, Cook's role at the Federal Reserve differs in relevant ways from the role of the officials addressed in *Wilcox* and *Boyle*. Most simply, unlike in those cases, the government does not dispute that Federal Reserve Governors are properly protected from at-will removal. That distinctive feature of this case matters. The government cites our observation—in a case where the President asserted unfettered at-will removal authority—that the government may be harmed by relief that "require[s] the President to work with removed principal officers." Mot. for Stay 20 (citing *LeBlanc v. U.S. Priv. & C.L. Oversight Bd.*, 2025 WL 1840591, at *2 (D.C. Cir. July 1, 2025) (per curiam)); *see also Dellinger v. Bessent*, 2025 WL 887518, at *4 (D.C. Cir. Mar. 10, 2025) (per curiam) (noting "injury to government" of "having to try and unravel" actions by an official the President wishes to remove). But here, the government agrees that the President may not direct the Federal Reserve's policy-making decisions, so to the extent he "works

with" members of the Board of Governors it is in a much different capacity than in the cases the government cites.

It is also not clear that the Federal Reserve wields executive power "in a similar manner as" the agencies at issue in *Wilcox* and *Boyle*. *See Boyle*, 145 S. Ct. at 2654. The Court in *Wilcox* took care to note that "[t]he Federal Reserve is a uniquely structured, quasi-private entity that follows in the distinct historical tradition of the First and Second Banks of the United States." 145 S. Ct. at 1415; *see also Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 98 F.4th 646, 657 (5th Cir. 2024) (Oldham, J., dissenting) ("The Fed's most important responsibility is administration of the money supply, . . . [which] is not an executive function.").

Finally, Cook has been serving in her position continuously despite the President's purported termination. Granting the government's request for emergency relief would thus upend, not preserve, the status quo. A stay would itself introduce the possibility of "the disruptive effect of the repeated removal and reinstatement" of Cook during this litigation. *Wilcox*, 145 S. Ct. at 1415.

Given these unique circumstances, and Cook's strong likelihood of success on at least her due process claim, the government's request for relief is rightly denied.

KATSAS, *Circuit Judge*, dissenting: The President removed Lisa Cook from her position as a Governor of the Federal Reserve System based on apparent misrepresentations Cook had made in applying for home mortgages. The district court preliminarily enjoined the Federal Reserve Board and its Chairman from effectuating Cook's removal. It held that pre-appointment conduct of a federal officer cannot support for-cause removal from office. It also held that Cook enjoys a constitutionally protected property interest in her office. In my view, both holdings are mistaken, and the equitable balance here tips in favor of the government. So, I would grant the government's motion for a stay pending appeal.

I

The Federal Reserve Act creates a Board of Governors consisting of seven Governors, each appointed by the President and confirmed by the Senate. 12 U.S.C. § 241. Federal Reserve Governors wield substantial power over "the economy as a whole." *Fed. Open Mkt. Comm. of Fed. Rsrv. Sys. v. Merrill*, 443 U.S. 340, 343–44 (1979). Among other things, they serve on the Federal Open Market Committee, 12 U.S.C. § 263(a), which implements monetary policy by buying and selling securities to set national interest rates. *See Merrill*, 443 U.S. at 344. Pursuant to the Act, Governors serve 14-year terms "unless sooner removed for cause by the President." 12 U.S.C. § 242.

In 2023, President Biden nominated and the Senate confirmed Lisa Cook to her current term as a Governor. In 2025, the Director of the Federal Housing Finance Agency referred to the Department of Justice allegations that Cook committed mortgage fraud in 2021—some two years before her appointment to her current term. According to the allegations, in June 2021, Cook obtained a $203,000 mortgage to purchase a property in Michigan that she promised to use as her "principal residence for at least one year after the date of

occupancy." ECF No. 1-2 at 2–3. A few weeks later, Cook allegedly obtained a second, $540,000 mortgage for a property in Georgia, which she also promised to use as her primary residence for one year. *Id.* at 3. Mortgages of a primary residence are typically eligible for lower interest rates than are other mortgages. *See*, *e.g.*, Fannie Mae, Getting It Right—Reverification of Occupancy (June 2021), https://perma.cc/AM6U-J8WB.

In light of these allegations, President Trump removed Cook for cause under section 242. The President determined that the allegations against Cook "call[] into question [her] competence and trustworthiness as a financial regulator." ECF No. 1-4 at 2.

Cook sued the President, the Board of Governors of the Federal Reserve System, and its Chairman. She claimed that the President lacked appropriate "cause" to remove her under section 242. She further claimed a constitutionally protected property interest in her position as a Governor, thus entitling her to adjudicatory process prior to her removal. Cook moved for a temporary restraining order to pause her removal.

The district court construed the TRO motion as one for a preliminary injunction and enjoined the Board and the Chairman from "effectuating" Cook's removal "in any manner." ECF No. 28. The court reasoned that Cook was likely to succeed on both claims. On the Federal Reserve Act claim, the court held that a for-cause removal requirement does not permit removal for any misconduct committed before the officer was appointed. *Cook v. Trump*, No. 25-cv-2903, 2025 WL 2607761, at *4–12 (D.D.C. Sept. 9, 2025). On the due-process claim, the court held that Cook had a constitutionally protected property interest in her office, entitling her to a hearing before she was removed. *Id.* at *13–17. Finally, the

court found that all the remaining preliminary-injunction factors favored Cook. *Id.* at *18–22.

The government seeks a stay pending its appeal.

## II

We consider four factors in deciding a motion for a stay pending appeal: whether (1) the government has made a strong showing that it will prevail; (2) the government will be irreparably harmed absent a stay; (3) issuance of the stay will substantially harm Cook or others; and (4) the stay is in the public interest. *Nken v. Holder*, 556 U.S. 418, 425–26 (2009). Applying these factors, I would grant a stay.

## III

The government has shown a strong likelihood that it will succeed on both claims at issue.

## A

Cook first alleges that her removal violates the for-cause requirement in the Federal Reserve Act. The government does not challenge the constitutionality of that requirement, so the only question presented is the meaning of "for cause" under section 242. The Act does not provide Governors with a statutory cause of action to challenge their removals. Nor does the Administrative Procedure Act afford a cause of action to challenge actions by the President. *See Franklin v. Massachusetts*, 505 U.S. 788, 800–01 (1992). Accordingly, to challenge her removal under section 242, Cook must satisfy the demanding standards for raising an *ultra vires* claim. *See NTEU v. Vought*, No. 25-5091, 2025 WL 2371608, at *18 (D.C. Cir. Aug. 15, 2025). Such a claim "is essentially a Hail Mary pass" that "rarely succeeds." *NRC v. Texas*, 605 U.S.

665, 681–82 (2025).  Among other things, Cook must show that (1) her removal is the product of an "extreme" legal error and (2) she has no other means to seek judicial review.  *NTEU*, 2025 WL 2371608, at \*18.  As to the first requirement, "[o]nly error that is patently a misconstruction of the Act, that disregards a specific and unambiguous statutory directive, or that violates some specific command of a statute will support relief."  *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 722 (D.C. Cir. 2022) (cleaned up).  A government official who has "misinterpreted or otherwise evaded [a] statutory obligation" may not satisfy this standard.  *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009) (Kavanaugh, J.).  Rather, the error must be "so extreme that one may view it as jurisdictional or nearly so."  *Griffith v. FLRA*, 842 F.2d 487, 493 (D.C. Cir. 1988).  In my view, Cook cannot show error at all, much less such an extreme error as to warrant correction through an *ultra vires* claim.[1]

Cook's claim turns on the meaning of the phrase "for cause" in section 242.  On that question of statutory interpretation, our review is *de novo*.  *Blackman v. District of Columbia*, 456 F.3d 167, 174 (D.C. Cir. 2006).  We read those words according to their "ordinary, contemporary, common meaning" at the time of their enactment.  *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014).

As originally passed in 1913, the Federal Reserve Act included a "for cause" removal protection for Board members.  Pub. L. No. 63-43 § 10, 38 Stat. 251, 260.  Congress repealed that requirement in 1933, Pub. L. No. 73-66 § 6, 48 Stat. 162,

---

[1]  Cook contends that the government forfeited reliance on this standard by not invoking it below.  But she herself pled her section 242 count as an *ultra vires* claim, ECF No. 1, at 19, and the district court granted relief on that claim.

166–67, but reinserted it in 1935, Pub. L. No. 74-305, § 203, 49 Stat. 684, 704–05.

In 1935, the ordinary meaning of "for cause" in the context of "the power of removal from office" was simply "some cause other than the will or pleasure of the removing authority, that is, some cause relating to the conduct, ability, fitness, or competence of the officer." *For Cause*, Black's Law Dictionary (3d ed. 1933). This meaning was also settled by 1913. *See For Cause*, Black's Law Dictionary (2d ed. 1910) ("With reference to the power of removal from office, this term means some cause other than the will or pleasure of the removing authority, that is, some cause relating to the conduct, ability, fitness, or competence of the officer.").

This broad definition "give[s] the President more removal authority than other removal provisions" imposed by Congress or reviewed by the Supreme Court. *Collins v. Yellen*, 594 U.S. 220, 255–56 (2021). In particular, it affords the President broader authority than a "good cause" requirement, *see id.*, which itself leaves the President with "ample authority" to remove an official who performs his statutory responsibilities incompetently, *Morrison v. Olson*, 487 U.S. 654, 692 (1988). It also gives the President more removal authority than a requirement of "inefficiency, neglect of duty, or malfeasance in office," *Collins*, 594 U.S. at 256 (cleaned up), a common requirement that commentators have referred to as "INM," Manners & Menand, *The Three Permissions: Presidential Removal and the Statutory Limits of Agency Independence*, 121 Colum. L. Rev. 1, 4 (2021). And in 1935, Congress deliberately chose a "for cause" requirement over the stricter INM requirement that was then famously at issue in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), and did so in an era when "for cause" restrictions were far less common than INM, *see* Manners & Menand, *supra*, at 74–75.

The President plainly invoked a cause relating to Cook's conduct, ability, fitness, or competence. The allegations against Cook could constitute mortgage fraud if she acted knowingly, and that is a felony offense. *See* 18 U.S.C. §§ 1014, 1344. "[F]raud" is an "excellent reason" for removal, not merely a permissible one. *Calcutt v. FDIC*, 37 F.4th 293, 338 (6th Cir. 2022) (Murphy, J., dissenting), *rev'd*, 598 U.S. 623 (2023). Moreover, even absent intentional misconduct, any misstatements in formal applications for six-figure loans are at least concerning. And the President specifically concluded that the allegations cast doubt on Cook's "competence and trustworthiness as a financial regulator." ECF No. 1-4 at 2. That is plainly a permissible "cause" under section 242.

The district court took a different approach. It concluded that pre-appointment misconduct cannot satisfy this modest "for cause" requirement. *Cook*, 2025 WL 2607761, at *10. Even Cook did not urge that position—and for good reason. Imagine a Governor who amassed his great wealth and stellar reputation based on financial fraud discovered only after he took office. Imagine a Governor who is discovered to have bribed a Senator to ensure confirmation. Or imagine a Governor who is discovered to have committed murder before taking office. Such pre-appointment acts clearly would relate to the "conduct, ability, fitness, or competence of the officer" for the office.

That is enough for the government to succeed on Cook's section 242 claim. The district court did not presume to review either the factual support for, or motive behind, the cause articulated by the President. *Cook*, 2025 WL 2607761, at *9 n.8, *12 nn.9–10. Asserting that power would have raised a host of difficulties. Normally, courts do not look behind a facially valid justification to probe the mental states of the President, *see Trump v. Hawaii*, 585 U.S. 667, 702–04 (2018),

or even Cabinet officials, *see Kleindienst v. Mandel*, 408 U.S. 753, 769 (1972); *United States v. Morgan*, 313 U.S. 409, 422 (1941). Nor do they normally assess evidentiary sufficiency on *ultra vires* review, *see Changji*, 40 F.4th at 726, or in the context of removals, *see Keim v. United States*, 177 U.S. 290, 295–96 (1900). But those questions are not currently presented. On the section 242 claim, the district court rested its likelihood-of-success determination entirely on the legal proposition that pre-appointment conduct cannot support a for-cause removal. As that position is untenable, the government is likely to succeed in appealing it.

## B

The government is also likely to succeed on Cook's procedural due process claim.

"The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) (cleaned up). Cook's claim is that the Federal Reserve Act creates the relevant property interest, to which the Due Process Clause of the Fifth Amendment attaches. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).[2]

The Supreme Court has long held that "public offices are mere agencies or trusts, and not property as such." *Taylor v. Beckham*, 178 U.S. 548, 577 (1900). In *Taylor*, the Court applied that principle to reject a due-process claim resting on

---

[2] Cook also claimed that the Act gave her a statutory right to adjudicatory process prior to her termination. The district court did not pass on that claim, so it cannot support the preliminary injunction.

an alleged property interest in the governorship of the Commonwealth of Kentucky. *See id.* The Court explained: "The view that public office is not property has been generally entertained in this country." *Id.* at 576. The Court cited *Crenshaw v. United States*, 134 U.S. 99 (1890), which had held that "an officer appointed for a definite time, or during good behavior" had no "vested interest or contract right in his office" as against congressional override. *Id.* at 104; *see Taylor*, 178 U.S. at 576–77 (discussing *Crenshaw*). Finally, the Court in *Taylor* concluded that "the nature of the relation of a public officer to the public is inconsistent with ... a property ... right." *Id.* at 577.

Cook invokes more recent, new-property cases tracing to *Roth* and *Goldberg v. Kelly*, 397 U.S. 254 (1970). In particular, she invokes *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), which held that a state statute protecting civil-service employees from removal absent "misfeasance, malfeasance, or nonfeasance in office" created a property right protected by due process and thus entitled such employees to a hearing prior to any termination. *See id.* at 538–39, 545. *Loudermill* has been extended to federal "career appointee[s]" as well, based on removal protections afforded by the Civil Service Reform Act. *See Esparraguera v. Dep't of the Army*, 101 F.4th 28, 30–31 (D.C. Cir. 2024).

Cook, however, is no mere civil-service employee who is "part of the broad swath of 'lesser functionaries' in the Government's workforce." *Lucia v. SEC*, 585 U.S. 237, 245 (2018) (cleaned up). She is an "Officer[] of the United States" within the meaning of the Appointments Clause of the Constitution, U.S. Const. Art. II, § 2, cl. 2; *see Lucia*, 585 U.S. at 245. And not just any officer, but a principal officer, who must be appointed by the President with the advice and consent of the Senate—and who is supervised by nobody except the

President. *See* U.S. Const. Art. II, § 2, cl. 2; *United States v. Arthrex, Inc.*, 594 U.S. 1, 14 (2021). She serves as a Federal Reserve Governor and a member of the Federal Open Market Committee, both of which wield significant power over the nation's economy. In my view, she is much more akin to the Governor of the Commonwealth of Kentucky than to the security guard who was the plaintiff in *Loudermill* or the career attorney in the Senior Executive Service who was the plaintiff in *Esparraguera*. As a principal officer of the United States, she serves in a position of public "trust" that creates no property rights. *See Taylor*, 178 U.S. at 576–77.

My colleagues acknowledge that principal officers of the United States generally have no property right in the offices that they occupy. But, they say, Cook is different because she is a most unusual principal officer—one who is not removable at will. In my view, that consideration does not distinguish *Taylor*. After all, even at the time of *Taylor*, the Governor of Kentucky had a state constitutional entitlement to serve for a fixed term of four years. Ky. Const. § 72 (1891). And he could be removed from office only in the extremely unlikely event of impeachment in the state house of representatives and conviction by a supermajority in the state senate. *Id.* §§ 68–70. In that respect, his tenure was at least as secure as that of an appointed officer who may be removed for cause.

In any event, the employee-property cases would not help Cook even if they were extended to principal officers. These cases recognize that an employee has some legitimate claim of entitlement and thus a property right. But as Judge Easterbrook has explained: "If there is such a claim, we must ask: *in what?* What, particularly, is the 'property' in a public job? Is it the emoluments of the office, the official power of the office, or the honor of it all?" *Thornton v. Barnes*, 890 F.2d 1380, 1392 (7th Cir. 1989) (Easterbrook, J., concurring). Does one "'own'

a public office as private 'property'?" *Id.* Of course not. The employee-removal cases do not upend the commonsense intuition that one does not have a "private property" right to wield "[g]overnmental powers" in our democratic system of government. *Id.*

For these reasons, Cook does not have a property interest in her position, so the government is likely to succeed in defending against her procedural due process claim.[3]

IV

The remaining factors also counsel in favor of a stay. When "the government is the party sought to be enjoined, the public interest and balance of equities factors merge."

---

[3] Even if Cook did have some property interest in her employment as a Federal Reserve Governor, I doubt that she would be entitled to a pre-removal hearing as a matter of due process. In finding such a due-process right in *Loudermill*, the Supreme Court noted that removed civil-service employees may depend on regular income from their jobs and thus be forced "onto the welfare rolls" if wrongfully terminated. 470 U.S. at 544. One suspects that is not the case for principal officers of the United States in general—or for Governors of the Federal Reserve Board in particular. Moreover, the Court in *Loudermill* discounted the government's need for immediate termination given the possibility of suspending employees with pay during the pendency of a pre-termination hearing. *See id.* at 544–45. But the President has no option to suspend principal officers of the United States with pay, particularly those with fixed terms like Federal Reserve Governors. *See* 12 U.S.C. § 242. These considerations suggest that, under the interest-balancing required by *Mathews v. Eldridge*, 424 U.S. 319 (1976), a principal officer may not be entitled to a pre-termination hearing even if a civil-service employee is. Because this issue was neither briefed nor decided below, I merely flag it here.

*MediNatura, Inc. v. FDA*, 998 F.3d 931, 945 (D.C. Cir. 2021). So I consider them together.

In cases involving the President's removal of principal officers, "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025). That is why the Supreme Court has recently stayed preliminary injunctions preventing the President from removing members of the National Labor Relations Board, the Merit Systems Protection Board, and the Consumer Product Safety Commission. *See id.*; *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025). Those cases involved removals without cause. But the harm to the government is surely *magnified* where the removal is based not on the President's policy preferences, but on serious accusations of misconduct that "call[] into question" an officer's "competence and trustworthiness." ECF No. 1-4 at 2. And although *Wilcox* flagged a distinct question whether the Governors of the Federal Reserve System could be removed at will, 145 S. Ct. at 1415, that bears only on an Article II question not presented here. It does not suggest that the balancing of harms should come out any differently.

Cook contends that her position, as a Governor of the Federal Reserve System, is singularly important in American government. In *Collins*, the Supreme Court declined to peg the merits of its removal jurisprudence to an individualized assessment of the relative importance of agencies such as the Consumer Financial Protection Bureau and the Federal Housing Finance Agency. 594 U.S. at 251–53. The Court stressed the "severe practical problems" with making such comparative judgments. *Id.* at 252. Given those problems, we should also be reluctant to distinguish between, say, the Board

of Governors of the Federal Reserve System and the National Labor Relations Board in the equitable-balancing aspect of our removal jurisprudence. Moreover, the Board of Governors no doubt *is* important, but that only heightens the government's interest in ensuring that its Governors are competent and capable of projecting confidence into markets. And in empowering the President to remove Governors for cause, Congress has specifically assigned that task to the President.

My colleagues suggest that the nature of Cook's claim diminishes the importance of the government interests at stake. They reason that a procedural due process claim would not disable the President from removing a Governor, but only would require some adjudicatory process first. Perhaps in theory. But if a Governor could demand a constitutional entitlement to adjudicatory process prior to her removal, she also could enlist the judiciary to review the adequacy of that process. Even with substantial expedition, judicial review can frustrate presidential action for months or even years. *See, e.g.*, *Trump v. Hawaii*, 585 U.S. at 676–82. And that would enable a potentially compromised Governor to engage in significant governmental action—such as voting on whether to adjust interest rates, which Cook says she must do tomorrow.

On Cook's side of the balance, nothing distinguishes this case from the interests of the removed officials in *Wilcox* and *Boyle*. The district court flagged the loss of Cook's ability to serve in her "high-ranking, public-servant role." *Cook*, 2025 WL 2607761, at *20. But the same was true for those other officials, and yet the Supreme Court held that this did not outweigh the competing injuries to the government. *See Wilcox*, 145 S. Ct. at 1415; *Boyle*, 145 S. Ct. at 2654; *accord Dellinger v. Bessent*, No. 25-5052, 2025 WL 887518, at *4 (D.C. Cir. Mar. 10, 2025) (per curiam). Moreover, wrongly removed federal officials generally may obtain their salary

through suits for backpay, *see Humphrey's Ex'r*, 295 U.S. at 618, which further undercuts the need for enjoining the effect of a presidential removal order.

## V

For these reasons, I would grant the government's stay motion. As my colleagues deny the motion, I respectfully dissent.